908 P.2d 770

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard Leonard JOHNSON,
Defendant–Appellant.**

**No. 15710.**

Court of Appeals of New Mexico.

Oct. 4, 1995.

Tom Udall, Attorney General and Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender and Darryl A. Bouchard, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

*OPINION*

FLORES, Judge.

1. Defendant appeals his convictions of false imprisonment and two counts each of aggravated assault and second degree criminal sexual penetration. Defendant raises four issues on appeal: (1) the trial court erred in not allowing Defendant to introduce evidence, other than his own testimony, to support his contention that the complaining witnesses, T.A. and T.S., were prostitutes who accused him of rape in retaliation for his refusal to pay for consensual sex; (2) Defendant was denied his right to a fair trial due to misconduct by the prosecutor; (3) the trial court erred in allowing the prosecutor to mention a third victim when the State indicated they had been unable to locate the complaining witness; and (4) Defendant was denied his right to a fair trial due to cumulative error. We reverse on issue one. Accordingly, we find it unnecessary to address Defendant's other issues, including his suggestion that our rape shield law, NMSA 1978, § 30-9-16 (Repl.Pamp.1994), is unconstitutional as applied in this case.

*BACKGROUND*

2. The charges against Defendant arise from several incidents of alleged rapes. More specifically, the State alleged that Defendant picked up women on Central Avenue in Albuquerque by deceiving them into believing he was a police officer, took them to secluded areas, and forced them to have sex with him at knifepoint. Defendant's defense was that the women were prostitutes who engaged in consensual sex with him.

*DISCUSSION*

3. Prior to trial, Defendant and the State made opposing motions regarding the introduction of evidence of the complaining witnesses' sexual conduct. Defendant sought to present evidence of the women's prior sexual conduct, and the State opposed mention of or reference to their sexual conduct with any person other than Defendant or to any illicit sexual activity in which they may have engaged. The trial court ultimately denied Defendant's request and granted the State's motion. We review the trial court's ruling for an abuse of discretion. *See State v. Ramos,* 115 N.M. 718, 724, 858 P.2d 94, 100 (Ct.App.), *cert. denied,* 115 N.M. 602, 856 P.2d 250 (1993).

4. At the in camera hearing held pursuant to SCRA 1986, 11-413(B) (Repl.1994), Detective Arbogast testified that T.A. told him that she had not been working as a prostitute on the night of the alleged assault, but that she had done so on past occasions. During argument on the opposing motions, the prosecutor acknowledged that T.S. had been arrested for prostitution subsequent to the encounter between her and Defendant. It appears that Defendant was prepared to introduce evidence that T.S. had been arrested after she got in a car with an undercover officer on Central Avenue.

5. The State argues that Defendant did not preserve his claim that exclusion of the evidence deprived him of his right to effectively cross-examine the witnesses against him. We disagree. Defendant's written motion specified his desire to introduce evidence of the complaining witnesses' prior sexual conduct. It is clear from argument of the parties' counsel that they and the trial court were debating and considering the admissibility of any evidence, aside from Defendant's testimony, that T.A. and T.S. worked as prostitutes before, during, or after the nights on which they were allegedly sexually assaulted by Defendant. Defendant specifically sought, and the trial court refused, permission to question the women about their experiences with prostitution and to introduce extrinsic evidence, other than Defendant's testimony, tending to prove they were prostitutes. The effect of the trial court's ruling was that Defendant was unable to challenge the women with respect to their explanations for being out on Central Avenue when they encountered him. Defendant was further prohibited from even mentioning the

word "prostitution" during his cross-examination of Detective Arbogast. This, in turn, adversely affected Defendant's defense theory and his constitutional right to confront the witnesses against him.

6. The heart of Defendant's defense theory was that Defendant and the complaining witnesses agreed to trade money for sex and that the women had negative reactions when Defendant refused to pay them. Defendant testified to this effect, and his counsel argued at closing that T.A. "got more action and less money than she thought." Defendant's defense was structured around the premise that his admitted acts of intercourse with the victims were consensual. Additionally, Defendant argues that, when he failed to pay the victims for engaging in sex as prostitutes, they retaliated, accusing him of rape when they did not receive remuneration for their respective sexual favors. Defendant's argument is essentially that the victims had a motive or reason to fabricate their rapes. Admittedly, defense counsel did not use the phrase "motive to lie" when he argued to the trial court in favor of admission of corroborating evidence that the women were prostitutes. However, we believe that his arguments that the participants had a difference of opinion as to remuneration for the sexual services performed pursuant to their "contract" were adequate to alert the trial court to the basis for Defendant's proffer. *Cf. United States v. Nez*, 661 F.2d 1203, 1206 (10th Cir.1981) ("motive to fabricate" theory of admissibility was not proffered to the trial court and tendered argument and testimony did not clearly relate to such a theory).

■ 7. The State makes several arguments in support of the trial court's ruling. We are not persuaded by these arguments. The State first argues that Defendant offered only opinion evidence that the complaining witnesses were prostitutes. As we stated above, Defendant proffered evidence to the effect that T.A. admitted to the investigating detective that she had engaged in prostitution in the past and that T.S. had been arrested for prostitution after she got into a car with an undercover officer. The State has not established that the underlying evidentiary facts were not based on personal knowledge or that they otherwise constituted inadmissible opinion testimony. *Cf. Mar-*

*tinez v. Metzgar*, 97 N.M. 173, 175, 637 P.2d 1228, 1230 (1981) (statements of belief or opinion by lay witness not based on personal knowledge are not admissible evidence); SCRA 1986, 11–701 (Repl.1994) (limitations on lay witness opinion testimony). Thus, we reject the State's contention that the refused testimony was inadmissible opinion evidence.

8. Next, the State argues that Defendant made statements to the effect that the complaining witnesses were not acting as prostitutes when the incidents occurred. Defendant's statements as reflected in the record do not support the State's suggestion that Defendant acknowledged that T.A. and T.S. were not prostitutes. Instead, the record suggests the opposite. Defendant told Detective Arbogast that he believed T.A. had been forced out on the street by her pimps. He further told Detective Webb that T.S. told Defendant on the night of the incident that she was out prostituting. Also, Defendant testified at trial that both T.A. and T.S. agreed to perform sex acts with him for money.

9. The State further argues that under SCRA 1986, 11–413(A) (Repl.1994), evidence of the women's prior sexual behavior and their propensity for engaging in sexual relations is not relevant to their later consent. *State v. Fish*, 101 N.M. 329, 333, 681 P.2d 1106, 1110 (1984), cited by the State, does indeed support the proposition that evidence of a complaining witness's prior sexual activity does not of itself bear on the issue of her subsequent consent to engage in sexual activity. However, we have recognized that evidence that a rape victim previously engaged in prostitution "might well be relevant if it were contended that the intercourse with the defendant was itself an act of prostitution." *State v. Romero*, 94 N.M. 22, 26, 606 P.2d 1116, 1120 (Ct.App.1980). This is precisely the contention here. In any event, this point begs the question of whether evidence that T.A. and T.S. were prostitutes was material and relevant to an issue other than consent. *See* SCRA 11–413(A) (trial court to consider whether evidence of victim's past sexual conduct is material and relevant to the case). In this case, Defendant's proffer of evidence went beyond an attempt to show that the sexual acts were consensual. The proffer went to the issue of whether the victims had

reason to fabricate the rape to avenge Defendant's failure or refusal to pay them.

■ 10. The State also argues that evidence that T.A. and T.S. were prostitutes is not probative of their motive to lie about the alleged rapes. However, we believe this evidence would have tended to support Defendant's claim that the women agreed to engage in sexual activity with him for money and later alleged that Defendant raped them because he refused to pay. See Commonwealth v. Davis, 438 Pa.Super. 425, 652 A.2d 885, 889 & n. 3 (1995) (evidence of victim's convictions for prostitution would have strengthened defense that victim brought rape charges in retaliation for defendant's refusal to pay for agreed-upon act of prostitution); Johnson v. State, 332 Md. 456, 632 A.2d 152, 156–60 (1993) (evidence that in past victim exchanged sex for drugs would have supported defendant's argument that victim's rape allegation was vindictive response when defendant did not give bargained-for drugs following sex with defendant). We recognize that proof of the women's vocation is not conclusive on the issue of their motive to fabricate. However, it could rationally and logically be inferred from that evidence that the complaining witnesses' charges were prompted by revenge. See Manlove v. Sullivan, 108 N.M. 471, 475 n. 2, 775 P.2d 237, 241 n. 2 (1989) (discussing the relevancy of evidence that prosecutrix had in the past fabricated similar stories of rape and had once recanted such a story, since it goes to proclivity for truthfulness and is relevant for impeachment purposes and as evidence of fabrication defense); see also Dull v. Tellez, 83 N.M. 126, 128, 489 P.2d 406, 408 (Ct.App. 1971) (reasonable inference defined).

■ 11. We conclude that evidence that T.A. and T.S. were prostitutes should have been admitted for the purpose of showing a possible motive to fabricate. We believe admission of this evidence is consistent with the modern trend toward liberal admission of relevant evidence once it has been shown to have some probative value. See State v. Beachum, 82 N.M. 204, 206, 477 P.2d 1019, 1021 (Ct.App.1970) (liberal admission of facts which appear to bear some degree of relevancy to matters in issue); 1A John Henry Wigmore, Evidence in Trials at Common Law § 62, at 1311 (Tillers rev. 1983). Nor,

since the trial was essentially a swearing match between Defendant and the complaining witnesses, was the evidence merely cumulative of Defendant's testimony. See State v. Trejo, 113 N.M. 342, 346–47, 825 P.2d 1252, 1256–57 (Ct.App.1991) (compelling to consider all legitimate evidence bearing upon the issues and the credibility of witnesses testifying on those issues), cert. denied, 113 N.M. 524, 828 P.2d 957 (1992); cf. SCRA 1986, 11–403 (Repl.1994) (exclusion of "needless" cumulative evidence).

■ 12. More important, however, is Defendant's constitutional right under the Sixth Amendment to the United States Constitution and Article II, Section 14, of the New Mexico Constitution to confront the witnesses against him, the most important element of which is the right of cross-examination. State v. Sanders, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994). "Cross-examination of adverse witnesses is the primary means for testing their truth and credibility and is essential to ... the fact-finding process." Id.; see also Commonwealth v. Stockhammer, 409 Mass. 867, 570 N.E.2d 992, 998 (1991) (principles protecting defendant's right to cross-examination are particularly important in rape case). The trial court can place reasonable limitations on cross-examination where, as in this case, there are concerns about prejudice. Sanders, 117 N.M. at 459, 872 P.2d at 877. The broad exclusion of such evidence by the trial court, on the other hand, must be weighed against Defendant's constitutional right to confront the witnesses against him. See Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam) (abuse of discretion in not allowing cross-examination of prosecutrix for impeachment purposes to show that she fabricated rape in order to keep boyfriend from finding out that she voluntarily had sexual intercourse with an acquaintance, on grounds that boyfriend's race might inflame jury passions); Johnson, 632 A.2d at 161 (citing cases allowing evidence of past prostitution on right-of-confrontation grounds). Here, Defendant proffered testimony that the women worked as prostitutes both prior to and following the night of the alleged rape, and that following the alleged rape T.S. was arrested for prostitution after getting into a car with an undercover officer on Central

Avenue. Consequently, cross-examination was vital in testing the credibility of both women, who claimed that they were not working as prostitutes when they were picked up by Defendant. *Davis*, 652 A.2d at 889 (evidence of prior prostitution to show victim had motive to lie when defendant refused to pay for agreed-upon act of prostitution was particularly important to defense where victim was sole witness and victim and defendant disagreed on issue of consent).

13. Finally, we turn to the State's claim that the evidence would have been extremely prejudicial both to the complaining witnesses and to the prosecution. *See* SCRA 11–413(A) (trial court to consider whether prejudicial nature of evidence of past sexual conduct outweighs its probative value). One purpose of the rape shield law is to encourage the reporting of rapes by protecting victims from unwarranted invasions of their privacy. *Romero*, 94 N.M. at 26, 606 P.2d at 1120. However, where individuals publicly make themselves available for commercial sex, we do not believe our rape shield law was intended to protect them from public disclosure of such acts. *See Drake v. State*, 108 Nev. 523, 836 P.2d 52, 55 (1992) (per curiam) (policies behind rape shield laws largely disappear when dealing with illegal acts of prostitution). A second purpose of the rape shield law is to insulate the jury from prejudicial material, thus avoiding the possibility the jury will pass moral judgment on the victim. *Romero*, 94 N.M. at 26, 606 P.2d at 1120. We recognize that the evidence Defendant seeks to introduce may well be prejudicial to the State's case. However, we hold that the trial court abused its discretion in determining that the prejudicial effect outweighed its probative value. *See Olden*, 488 U.S. at 230–32, 109 S.Ct. at 482–83 (trial court's ruling to exclude evidence on such grounds must be weighed against a defendant's right to confront witnesses). Other courts have reached similar results, particularly when the defendant seeks to introduce evidence of past prostitution to support his defense that the victim consented to an act of prostitution. *See Johnson*, 632 A.2d at 161; *Demers v. State*, 209 Conn. 143, 547 A.2d 28, 36–37 (1988) (and cases cited there).

14. Furthermore, the policy weighing against the admission of this type of evidence is not contravened in this case. That policy proscribes the admission of such evidence because "it is clear that its prejudicial effect is great. It is not the province of the jury to pass moral judgment on the victim, and the court should remove the temptation to do so wherever possible." *Romero*, 94 N.M. at 26, 606 P.2d at 1120. Here, Defendant testified that the women agreed to perform sex acts with him in exchange for money and that the women reacted negatively when Defendant refused to pay them. Consequently, the jury had already heard Defendant testify that the women were essentially working as prostitutes on the night of the alleged rapes.

15. For the reasons stated above, it is our view that the evidence proffered by Defendant was relevant and admissible to show the complaining witnesses' motive to fabricate, and that the net effect of the evidence did not pose a threat of unfair prejudice to the complaining witnesses or the prosecution. Accordingly, we hold that the trial court abused its discretion in denying Defendant's request to introduce otherwise admissible evidence that the complaining witnesses had worked as prostitutes and to cross-examine them on that subject. *See* SCRA 11–413(A) (trial court to balance probative value of evidence of victim's past sexual conduct against its inflammatory or prejudicial nature); *State v. Montoya*, 116 N.M. 297, 304–05, 861 P.2d 978, 985–86 (Ct.App.) ("An abuse of discretion is an erroneous conclusion and judgment clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances."), *cert. denied*, 116 N.M. 364, 862 P.2d 1223 (1993).

## CONCLUSION

16. Based on the foregoing, we reverse Defendant's convictions and remand for a new trial.

17. **IT IS SO ORDERED.**

APODACA, C.J., and WECHSLER, J., concur.