1997-NMSC-036

944 P.2d 869

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Richard Leonard JOHNSON, Defendant–Respondent.**

**No. 23262.**

Supreme Court of New Mexico.

Aug. 1, 1997.

Tom Udall, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Plaintiff–Petitioner.

T. Glenn Ellington, Chief Public Defender, Darryl A. Bouchard, Assistant Appellate Defender, Santa Fe, for Defendant–Respondent.

## OPINION

MINZNER, Justice.

1. The State appeals a New Mexico Court of Appeals decision granting Defendant Richard Johnson a new trial. *See State v. Johnson,* 1995 NMCA 170, ¶ 16, 121 N.M. 77, 908 P.2d 770 (Ct.App.1995). A jury convicted Defendant of two accounts each of aggravated assault and second degree criminal penetration, and one count of false imprisonment. The trial court had ruled prior to trial that NMSA 1978, Section 30–9–16 (Repl. Pamp.1994) (New Mexico's rape shield law), and Rule 11–413 NMRA 1997 prevented admission of evidence of the victims' prior sexual conduct. The Court of Appeals reversed the conviction and remanded the case for a new trial, holding that the trial court's decision against admitting such evidence deprived him of his Sixth Amendment right of confrontation. *See Johnson,* 1995 NMCA 170, ¶ 16. We granted certiorari in this case

to address the protection provided by Section 30–9–16 and Rule 11–413, and the limitations imposed on that protection by the Sixth Amendment. We conclude that, in this instance, our rape shield law and corresponding rule prevent the admission of prior sexual conduct by the victims, because Defendant failed to show (a) that the evidence was material and relevant, and (b) that its probative value equalled or outweighed its inflammatory or prejudicial nature. *See* Rule 11–413(A). We therefore reverse the Court of Appeals and remand this case to the Court of Appeals for consideration of the other issues Defendant raised on appeal. *See Johnson,* 1995 NMCA 170, ¶ 1.

## I. FACTS AND PROCEDURE

2. The charges of which Defendant was convicted stem from two separate incidents, each occurring on Central Avenue in Albuquerque. The State contended that on or about August 25, 1991, Defendant enticed T.A. to enter his car by indicating that he was a law enforcement officer and needed to speak to her; and that on or about October 11, 1992, he offered T.S. a ride, which she accepted. After each woman entered his car, he drove her to a secluded area where he assaulted and raped her.

3. Defense counsel told the jury during opening statement that Defendant . approached each woman believing her to be a prostitute, that each incident was "a commercial relationship, not forced sex," and that during the course of "these acts for which [Defendant] was paying money, he did things which annoyed, angered and, in some ways, frightened these women." Counsel for the State and for Defendant each told the jury the issue was whether Defendant used force to overcome each victim's will or whether each had consented.

4. Defense counsel filed a motion in limine pursuant to Section 30–9–16(C), asking the court to consider the "admissibility of evidence of the prior sexual conduct of the alleged victims." Relying on Rule 11–413, the State opposed his motion and filed its own motion in limine seeking to preclude evidence "of any sexual conduct by any vic-

tim with any person other than the defendant" and any reference "to any alleged illicit sexual activity performed by any victim in this case."

5. A few days before trial, Defendant and the State each made legal arguments to the court in support of their respective motions. The court ruled it would hold the in camera hearing after selecting the jury and before opening statements. Subsequently, at the in camera hearing, the court heard testimony from Detective Jeff Arbogast and arguments by the State and the Defendant. Detective Arbogast had investigated the case and interviewed the victim-witnesses, T.A. and T.S. Detective Arbogast testified that both T.A. and Defendant Johnson told him that, on that night, T.A. was not acting as a prostitute. Defendant elicited from Detective Arbogast evidence that T.A. told him she had not been working as a prostitute when she got into the car with Defendant, but on occasions in the past she had engaged in acts of prostitution in order to pay her rent. Defendant argued that this admission went "to a central issue" and also "to her credibility." At the close of the hearing, the trial court denied Defendant's request and granted the State's motion.

6. At trial Defendant attempted to cross-examine T.S. on whether she was frightened while she was with Defendant; he also attempted to ask her whether she had stopped entering cars of strangers. The court sustained the State's objection. Defendant testified in his own defense. He admitted that he engaged in acts of sexual intercourse with each woman. He testified that they consented to some acts but not to others. The jury acquitted Defendant on a number of counts, including one that charged him with kidnapping and one that charged him with impersonating a police officer. The jury convicted Johnson of aggravated assault, second degree criminal penetration and false imprisonment.

7. The Court of Appeals reversed Defendant's conviction and remanded the case for a new trial on grounds that the evidence in question should have been admitted for the purpose of showing possible motive to fabricate. *See Johnson*, 1995 NMCA 170, ¶ 15.

The Court of Appeals emphasized the importance of a defendant's constitutional right of confrontation and identified that right as a significant basis for determining relevance. *Johnson*, 1995 NMCA 170, ¶ 12. Additionally, the Court of Appeals held that "the net effect of the evidence did not pose a threat of unfair prejudice to the complaining witnesses or the prosecution," and thus the trial court abused its discretion in denying Defendant's request. *Johnson*, 1995 NMCA 170, ¶ 15. The Court of Appeals reasoned that Defendant's proffer of evidence "went beyond an attempt to show that the sexual acts were consensual," and "went to the issue of whether the victims had reason to fabricate the rape to avenge Defendant's failure or refusal to pay them." *Johnson*, 1995 NMCA 170, ¶ 9. The Court of Appeals also stated in its analysis that the rape shield statute does not prevent the public disclosure of the acts of individuals who make themselves available for commercial sex. *Johnson*, 1995 NMCA 170, ¶ 13.

8. We granted certiorari to review the trial court's exclusion of evidence of the victims' prior sexual activity. The central question is whether our rape shield law permits the introduction of such evidence when the evidence tends to prove that the alleged victim acted as a prostitute on the occasion, consented to sex, and subsequently fabricated a claim of rape. We conclude it does. However, this case also raises another question, which is whether a defendant must make a showing that there is evidence to support a theory of fabrication before being allowed to introduce evidence of prior acts of prostitution. We conclude the answer to this question is yes. We also conclude that Defendant did not make an adequate showing.

## II. DISCUSSION

9. We agree with much of the Court of Appeals' analysis. We particularly agree with the Court of Appeals' emphasis on a defendant's constitutional right of confrontation as a basis for determining relevance and weighing probative value, and on the admissibility of evidence of prior sexual conduct to show bias, motive to fabricate or for other purposes consistent with the constitutional

right. Nevertheless, we disagree with the Court of Appeals' application of the statute and rule to the facts of this case. On this record, we conclude Defendant failed to show relevance.

10. We begin our discussion with the historical development of rape shield laws. We next examine our own rape shield statute and evidentiary rule. We conclude that our statute and rule implicitly recognize the admissibility of evidence necessary to protect a defendant's right of confrontation and that the trial court exercises discretion under our statute and rule to admit evidence of prior sexual conduct in order to protect a defendant's right of confrontation, as well as implement the Legislature's goals in enacting the statute. We also conclude a motive to fabricate is a theory of relevance that justifies admissibility of evidence otherwise restricted by our statute and rule, but that evidence of prior acts of prostitution is not a sufficient showing of a motive to fabricate. Finally, we examine the showing Defendant made in this case.

A. *History of Rape Shield Laws Generally*

11. Prior to the development of rape shield laws, evidence of a rape victim's past sexual experience was offered as evidence on various theories of relevance. *See* Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior,* 44 Cath.U.L.Rev. 709, 714–17 (1995). If the rape victim had had prior sexual experience, this might be offered to impeach her credibility or to show her consent to the sexual act in question. *See id.* at 715. At that time, some believed that evidence of consent to a previous act of sexual intercourse was relevant and material in a criminal trial to a subsequent charge of rape, based on the reasoning that someone who had consented previously would have been more likely to have consented on the particular occasion at issue. *See id.; State v. Wood,* 59 Ariz. 48, 122 P.2d 416,

418 (1942); *People v. Johnson,* 106 Cal. 289, 39 P. 622, 623 (1895). Evidentiary use of the complainant's prior sexual conduct, pursuant to various theories of relevance, appeared to have deterred victims of sexual assault from making formal complaints. Fishman, *supra,* at 716. During the 1940s and the 1960s, governmental agencies and scholars conducted research to determine the extent to which sexual assault crimes were being reported. *See* J. Alexander Tanford & Anthony J. Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544, 547 nn. 12–13 (1980) (citing studies of comparing the number of rapes reported with estimates of actual number of rapes). Many concluded that victims' concern for their privacy partly explained the gap between the number of projected or perceived occurrences and the number of actual complaints. *See generally* Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn.L.Rev. 763, 765 (1986) (describing "the impetus behind the nationwide reform of evidentiary law applicable to rape prosecutions that swept through state legislatures and Congress in the mid–1970s"). "Rape-shield laws, as they are popularly known, reversed the long-standing common-law doctrine that permitted a defendant accused of rape to inquire into the complainant's 'character for unchastity,' that is, her propensity to engage in consensual sexual relations outside of marriage." *Id.* at 765–66 (footnotes omitted).

12. The rape shield laws and evidentiary rules enacted and adopted in recent years [1] address the problem of underreporting and reluctance to testify. *See generally Commonwealth v. Joyce,* 382 Mass. 222, 415 N.E.2d 181, 185–86 (1981) (discussing the Massachusetts rape shield law as reversing the common law rule that general reputation for unchastity was admissible when consent was in issue). "Reformers have argued that inquiries into the sexual history of the rape complainant [chill] her willingness to testify.

---

1. Professor Fishman states that "Congress and forty-eight state legislatures have enacted rules to exclude such evidence unless a special showing of relevance can be made." Fishman, *supra,* at 712; *see id.* at 717 n. 25 (listing rape shield statutes). Arizona has recognized relevant principles in case law, *see State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946, 950–53 (1976); the Supreme Court of Utah has incorporated a comparable rule into its rules of evidence, Utah R.Evid. 412.

Moreover, reputation evidence is only marginally, if at all, probative of consent." *Id.* 415 N.E.2d at 186. Rape shield laws, evidentiary rules, and case law generally limit the admission of prior sexual conduct evidence into trials of charges of criminal sexual penetration or other such criminal sexual contact, such as this case, unless such evidence can be demonstrated to be material to the defendant's theory and the trial court is persuaded that the probative nature of the evidence equals or outweighs its prejudicial effect. However, statutes, rules, and cases vary.[2]

13. Some jurisdictions have chosen to make such evidence admissible only on a particular issue or issues. For example, in the State of Washington, such evidence is admissible to prove the victim's consent only "when the perpetrator and the victim have engaged in sexual intercourse with each other in the past." Wash.Rev.Code § 9A.44.020 (1996). In *Winfield v. Commonwealth,* 225 Va. 211, 301 S.E.2d 15, 19 (1983), the Virginia Supreme Court distinguished its statute from others. "Most of these [rape shield laws] limit or prohibit the admission of general reputation evidence as to the prior unchastity of the complaining witness but some, like ours, permit the introduction of evidence of specific acts of sexual conduct between the complaining witness and third persons in carefully limited circumstances." *Id.* (citing Tanford and Bocchino, *supra,* at 592–602).

14. In *State v. Herndon,* 145 Wis.2d 91, 426 N.W.2d 347, 352 (App.1988), *overruled on other grounds sub nom. State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325, 330–31 (1990), the Wisconsin Court of Appeals characterizes Wisconsin as following the approach Professor Galvin identifies as "the Michigan approach." *Galvin, supra,* at 907. *Herndon* describes "[t]he rape shield laws which follow the Michigan approach [as] general prohibitions on prior sexual conduct or reputation evidence [that] have highly specific exceptions allowing for this evidence in those circumstances in which it is highly relevant and material to the presentation of a defense and

therefore constitutionally required." *Id.* 426 N.W.2d at 352–53. Professor Galvin lists twenty-five states as following "the Michigan approach," including Virginia and Wisconsin. *Id.* at 907, tbl. 1(A). In these states, "statutes have stripped courts of their discretion to determine the relevancy of sexual conduct evidence on a case-by-case basis." Galvin, *supra,* at 773.

15. The Federal Rules of Evidence generally prohibit admission of evidence of a victim's past sexual behavior, except (a) when evidence of specific instances of sexual behavior by the alleged victim is offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence; (b) when evidence of specific instances of sexual behavior between the victim and the defendant is offered to prove consent or offered by the prosecution; or (c) when exclusion of such evidence would violate the constitutional rights of the defendant. Fed.R.Evid. 412. Some states have modeled their statutes on the federal rule. *See* Galvin, *supra,* at 907, tbl. 1(C). Professor Galvin lists Connecticut, Hawaii, Iowa, New York and Oregon. *Id.*

16. Other states' laws do not have such specific limitations. These statutes restrict the admission of prior sexual conduct for any purpose. *See, e.g.,* Ark.Code Ann. § 16–42–101(c) (1994). New Mexico's statute falls in this group. *See* § 30–9–16(A). In such states, the trial court usually conducts a pretrial hearing in which the parties offer evidence and argument on the probative value and the material nature of the evidence. *See* § 30–9–16(C). Under some statutes, the trial court must then balance probative value against prejudicial effect to decide whether to allow the admission of the evidence. *See id.; see also* Ark.Code Ann. § 16–42–101(c)(2)(C). In Idaho, the statute simply authorizes the court to exercise discretion; the statute contains no explicit legislative direction on how the court should exercise its discretion. Idaho Code § 18–6105. Professor Galvin includes Alaska, Colorado, Kansas, New Jersey, Rhode Island, South Dakota

2. Professor Galvin has summarized the approaches taken and organized them into categories. Galvin, *supra,* at 773.

and Wyoming in this group, along with Arkansas, Idaho, New Mexico and Texas. *See* Galvin, *supra*, at 907, tbl. 1(B). She characterizes such statutes as following the "Texas approach," under which the trial court has broad discretion to admit or exclude evidence of prior sexual conduct based on a pre-trial or in camera hearing at which the judge considers an offer of proof and weighs probative value against prejudicial effect. *See id.* at 774. She characterizes this group as providing trial court judges "nearly unfettered discretion to admit sexual conduct evidence merely upon a showing of relevancy under traditional standards, that is, when probative value outweighs prejudicial effect." *Id.*

17. Professor Galvin identifies a fourth approach as "the California approach." *Id.* at 775. "Under the California approach, sexual conduct evidence is separated into two broad categories depending on the purpose for which it is offered. Evidence is categorized as either substantive evidence, which is offered to prove consent by the complainant, or credibility evidence, offered to attack her credibility." *Id.* Professor Galvin includes Delaware, Mississippi, Nevada, North Dakota, Oklahoma and Washington in this group. *Id.* at 907, tbl. 1(D).

B. *New Mexico's Statute, Rule and Cases*

18. Our Legislature first enacted a rape shield law in 1975. 1975 NM Laws, ch. 109, § 7. In its present form, it states in pertinent part:

> As a matter of substantive right, in prosecutions pursuant to the provisions of Section 30–9–11 through 30–9–15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Section 30–9–16(A). Our rule of evidence is consistent with the statute. *See* Rule 11–413(A).

19. "[T]he court has determined that the wording of the statute is not limited to sex by consent, rather, its unlimited wording applies to all sexual conduct." *State v. Johnson*, 102 N.M. 110, 117, 692 P.2d 35, 42 (Ct.App.1984) (citing *State v. Montoya*, 91 N.M. 752, 580 P.2d 973 (Ct.App.1978)). Nothing in our statute or rule, however, limits the reasons a court might find evidence material and of sufficient probative value to justify admission. In particular, nothing in the statute or the rule precludes the introduction of relevant evidence of prostitution when the probative value of that evidence equals or outweighs its prejudicial effect.

20. In contrast to those jurisdictions in which statutes contain specific limitations or exceptions, *see, e.g.,* Wash.Rev.Code § 9A.44.020; *see also* Fed.R.Evid. 412, our statute, rule, and cases rely on the trial court judge to identify theories of relevance as well as to exercise discretion, balance prejudicial effect against probative value, and thus determine admissibility on a case by case basis. *See* Galvin, *supra*, at 775. Our statute and rule provide for an in camera hearing to determine admissibility. The in camera hearing provides a formal opportunity to inform the trial court of the relevant facts and circumstances, make the arguments of relevancy, and explain the respective positions on balancing. In conducting that inquiry, the trial judge must depend on the moving party or parties to offer proof and argument in support of the ruling sought. In turn, the moving party must depend on our cases and, where appropriate, those of other jurisdictions to provide the trial judge with persuasive arguments and supporting proof. Our cases have not provided trial court judges particular direction in determining admissibility.

21. Our cases *have* held that trial courts should remove from the jury the temptation to pass judgment upon rape victims whenever possible. *See State v. Fish*, 101 N.M. 329, 332–33, 681 P.2d 1106, 1109–10 (1984) (upholding exclusion of prior sexual conduct evidence in the absence of substantial similarity between alleged prior rape and present case); *State v. Romero*, 94 N.M. 22, 27, 606 P.2d 1116, 1121 (Ct.App.1980) (recognizing the rape shield statute reflects "the

strong public policy in this state to prevent unwarranted intrusions into the private affairs of victims of sex crimes"). We interpret such holdings as providing only general guidance to the trial court judge in applying the statute and rule. Such holdings emphasize the trial court's power to protect victim-witnesses through its discretion in determining materiality and balancing probative value against potential prejudice. Professor Galvin has suggested that New Mexico's statute, because it follows the "Texas approach," gives our trial court judge "nearly unfettered discretion." Galvin, *supra*, at 774. We disagree with her characterization. The Minnesota Court of Appeals has said that "the rape shield statute serves to emphasize the general irrelevance of a victim's sexual history, not to remove relevant evidence from the jury's consideration." *State v. Crims*, 540 N.W.2d 860, 867 (Minn.Ct.App.1995). The same might be said of the New Mexico statute, notwithstanding its different formulation. Defendant's appeal provides us an opportunity to describe the bounds of a trial court's discretion under our statute and rule.

C. *Defendant's Right of Confrontation, the Trial Court's Exercise of Discretion, and the Admissibility of Prior Acts of Prostitution as Evidence of Motive to Fabricate*

■ 22. In *Romero*, the Court of Appeals addressed the admissibility of evidence involving the victim's prior acts of prostitution, and held that, on the facts before it, such evidence was not admissible. 94 N.M. at 25, 606 P.2d at 1119. In dicta, the Court stated that information regarding prostitution "might well be relevant if it were contended that the intercourse with the defendant was itself an act of prostitution." *Id.* at 26, 606 P.2d at 1120. In the instant case, the Court of Appeals concluded that Defendant's showing of relevance was sufficient; the Court of Appeals stated that "cross-examination was vital in testing the credibility of both women, who claimed that they were not working as prostitutes when they were picked up by Defendant." *Johnson*, 121 N.M. at 82, 908 P.2d at 775. We agree that evidence of prior sexual conduct must be admitted if a defendant shows that evidence implicates his or her constitutional right of confrontation. *See generally Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974) (noting the importance of cross-examination in probing the credibility of a witness). We are not persuaded that Defendant's showing of relevance in this case implicated his right of confrontation.

**1. Defendant's Right of Confrontation**

23. Application of the rape shield statute and rule often implicates "the opposing principles of the protection of victims of sexual crimes on one hand, and the right of the criminal defendant to cross-examine the witnesses against him on the other." *Johnson*, 102 N.M. at 116, 692 P.2d at 41. A defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and otherwise challenge an opposing version of facts—is a critical limitation on the trial court's discretion to exclude evidence a defendant wishes to admit. The category of rape-shield statute in which a jurisdiction falls is not relevant. *See, e.g., Pulizzano*, 456 N.W.2d at 333; *State v. Hudlow*, 99 Wash.2d 1, 659 P.2d 514, 518 (1983); *cf. Demers v. State*, 209 Conn. 143, 547 A.2d 28, 35–36 (1988) (holding trial court did not err in holding evidence of prior arrest for prostitution would have been admissible, and thus should have been disclosed by prosecution as relevant to credibility and probative "under the circumstances of this case to the substantive issue of consent.").

■ 24. The United States Supreme Court has reversed a state court conviction on the ground that statutory protection of witnesses from suffering humiliation on the stand may not prevent introduction of evidence of bias. *See Davis*, 415 U.S. at 320, 94 S.Ct. at 1112. The Sixth Amendment right to confrontation guaranteed all defendants protects a defendant's right to show bias. The analogy between the statute analyzed in *Davis*, and rape shield legislation is not only "plain," *Winfield*, 301 S.E.2d at 19, it is compelling. If application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair

defense, the statute and rule must yield. We conclude that Federal Rule of Evidence 412, which specifically provides that evidence is admissible if its exclusion would violate the constitutional rights of the defendant, states expressly what our rule must be construed to require implicitly.

## 2. The Trial Court's Discretion

■ 25. The balance that must be achieved in implementing the statute and rule and protecting the rights of a defendant is delicate. *See Hudlow,* 659 P.2d at 526 (Utter, J., dissenting) ("[T]he statute requires a delicate balancing of society's interest in preventing a heinous crime and the defendant's constitutional right to a fair trial."). Notwithstanding the approach taken by a jurisdiction in enacting rape shield legislation, the trial court plays an important role in preserving the "delicate balance" to which Justice Utter refers. The trial court often plays that role following an in camera hearing. *See generally Johnson v. State,* 332 Md. 456, 632 A.2d 152, 160 (1993) (describing the responsibility for balancing as "entrusted in the first instance to the trial court" and suggesting the importance of showing "special relevance," considering necessity and potential for prejudice). In that role, the court' must consider probative value not only in order to identify a theory of relevance, but also in order to evaluate the consequences of either admitting the evidence or excluding it. The prejudice to which the rule speaks most directly is prejudice to the necessary fact-finding.

> [A]fter assessing the legitimate probative value of the evidence, the court should "consider the effect of excluding such evidence on defendant's right to a fair trial" and balance that effect against the "potential prejudice to the truthfinding process itself ... to determine whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis."

Fishman, *supra,* at 726 (quoting *Hudlow,* 659 P.2d at 521). Notwithstanding the particular approach taken by a jurisdiction in enacting rape shield legislation, there are common concerns arising out of a defendant's constitutional right of confrontation that provide particular guidance to trial courts in discharging their responsibilities. *See generally Herndon,* 426 N.W.2d at 360 (describing a five-pronged federal test).

26. The Wisconsin Court of Appeals has provided an extensive analysis of several states' approaches to rape shield laws and of the balance struck between the defendant's right to confront witnesses and the state's interests in its own evidentiary rules. *Id.* at 351–60. Wisconsin's rape shield law expressly prohibited the admission of prior sexual conduct evidence "regardless of the purpose" except in three carefully circumscribed situations: (1) "[E]vidence of the complaining witness's past conduct with the defendant"; (2) "[E]vidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of the injury suffered"; (3) "[E]vidence of prior untruthful allegations of sexual assault made by the complaining witness." *Id.* at 358–59 n. 85. If a defendant wished to introduce evidence falling into one of these exceptions, the statute mandated that the trial court conduct a hearing to assess whether the evidence was admissible under the exceptions and whether its probative value was outweighed by its prejudicial nature, but the statute did not permit a hearing on the probative nature of the evidence unless it fell within one of the three exceptions. *See id.*

■ 27. The Wisconsin Court of Appeals found that application of the balancing test solely to situations involving the three circumscribed exceptions contained in the statute was too restrictive and hence unconstitutional. Relying on *Davis,* the court expanded the scope and application of this test. *Herndon,* 426 N.W.2d at 362–63. The court noted that "where the evidence to be admitted is probative of the complainant's bias or prejudice, shows that she has a motive to fabricate, or shows a continuing pattern of conduct, the trial court must balance the probativeness of the evidence against its prejudicial nature." *Id.* at 362. The court further articulated a six-pronged test trial courts must use to evaluate the

admissibility of such evidence: (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; (5) whether the probative value of the evidence outweighs its prejudicial effect; and (6) whether the prior acts evince a pattern of conduct rather than a single past act. *Id.* at 360; *see also id.* at 363.

28. Two years after the *Herndon* decision, the Wisconsin Supreme Court overruled the holding in *Herndon* that Wisconsin's rape shield law is unconstitutional, but upheld the use of the five-pronged federal test in evaluating the admissibility of prior sexual conduct. *Pulizzano,* 456 N.W.2d at 333. The Supreme Court of Wisconsin identified the standard it would follow in resolving questions "pitting a state's interest in its evidentiary rules against a defendant's constitutional right to present evidence" and concluded that "there must be compelling state interests to overcome the defendant's constitutional rights." *Id.* at 334. The Wisconsin Supreme Court held that the first five of the six *Herndon* tests, the federal test, "establish a constitutional right to present evidence otherwise excluded by a state evidentiary rule." *Pulizzano,* 456 N.W.2d at 334. We agree with the Wisconsin Supreme Court that a defendant's constitutional right to present evidence does not make our statute and rule unconstitutional. That right informs the trial court's exercise of discretion under the statute and rule. We also agree with the Wisconsin Supreme Court that a showing sufficient under the five-pronged federal test establishes a constitutional right to present evidence otherwise excluded by our statute. There may be other showings that are equally sufficient. We do not intend to limit the trial courts in the exercise of discretion under the rule and statute, but rather to suggest a possible framework for exercising that discretion.

### 3. The Admissibility of Evidence of Prior Acts of Prostitution as Evidence of Motive to Fabricate

29. In this case, Defendant sought to offer evidence of a prior act or acts in which the victims were alleged to have engaged with others who were not identified. This is not enough to implicate Defendant's constitutional right of confrontation. Motive to fabricate is a theory of relevance that does implicate the right of confrontation. A trial court would be entitled to determine that the prejudicial effect of prior sexual conduct evidence, such as evidence of prostitution, would not outweigh the probative value of evidence of a motive to fabricate. Nevertheless, evidence of prior acts of prostitution is not sufficient in itself to show a motive to fabricate. *See Winfield,* 301 S.E.2d at 21 (holding that "[e]vidence of past sexual conduct, to be admissible under the 'motive to fabricate' provisions ... must show a pattern of behavior which directly relates to the conduct charged against the complaining witness in the case on trial").

30. In *Winfield,* the defendant, who was convicted of sexual assault, appealed his conviction arguing that he was prejudiced by the trial court's ruling that evidence of the victim's acts of prostitution could not be admitted to show a motive to fabricate the charge. *Id.* at 19. The defendant claimed that the victim agreed to have consensual sex for which he would pay her $50.00. *Id.* at 18. When he did not give her the agreed upon amount, she became angry and accused him of rape to exact revenge. *Id.* The defendant wanted to prove that the victim had exchanged sex for money in the past, and that she had extorted money from a customer who had refused to pay her by threatening to tell his wife of their activities. *Id.* at 17. The defendant argued that the victim's actions displayed a pattern of retaliation against customers who refused to pay, which he claimed occurred in his case. *Id.* at 20.

31. The Virginia court reversed the convictions, remanding the cause to the trial court for an evidentiary hearing. *See id.* at 17–21. The court noted that "any evidence of prior sexual conduct by the complaining witness must comply with the usual rules of

evidence as well as the requirements of the 'rape shield law.'" *Id.* at 21. The court distinguished the evidence showing a pattern of threatening to retaliate or actually retaliating, from evidence of prior acts of prostitution. The court held that the former should have been admitted into trial as part of the defendant's case. However, the court held that the latter evidence was not admissible, because a sufficient nexus did not exist between those activities and the motive to fabricate a charge. *Id.*

■ 32. Both Wisconsin and Virginia appear to require a particularized showing of relevance. *Herndon,* 426 N.W.2d at 360; *Winfield,* 301 S.E.2d at 21. Other jurisdictions have reached comparable holdings. *See generally People v. Williams,* 416 Mich. 25, 330 N.W.2d 823, 829–831 (1982) (holding that evidence of reputation for, or specific instances of, prostitution is not admissible where the evidence has slight or little relevance to defendant's theory of the case); *Crims,* 540 N.W.2d at 866, 869 (holding trial court's exclusion of evidence of complainant's prior acts of prostitution proper where the relevance of such evidence was not shown); *cf. Hudlow,* 659 P.2d at 523–24 (holding evidence of general promiscuity inadmissible because there was no evidence of conduct comparable to defense theory). We also conclude that, in order to enable the trial court to perform its role in identifying a theory of relevance prior to balancing probative value against prejudice, a defendant must show sufficient facts to support a particular theory of relevance.

■ 33. For these reasons, we hold that when a defendant characterizes an alleged rape or other criminal sexual contact as an act of prostitution, evidence of prior acts of prostitution is not necessarily material and probative. A defendant must "specify the issue or issues the evidence is intended to address and demonstrate how the evidence is truly probative on those issues exclusive of the forbidden 'yes/yes inference.'" Fishman, *supra,* at 725. For example, a defendant may show that a victim has engaged in "a distinctive pattern of past sexual conduct, involving the extortion of money by threat after acts of prostitution, of which her alleged conduct in [a particular case] is but an example." *Winfield,* 301 S.E.2d at 20. Simply showing that the victim engaged in an act or acts of prostitution is not sufficient to show a motive to fabricate. *See id.*

34. We are not certain that *Romero* is inconsistent with our holdings in this case. *See generally id.,* 94 N.M. at 26, 606 P.2d at 1120 (holding that evidence victim was a prostitute not relevant to charge of rape, which victim said occurred at knifepoint, even though the defendant contended intercourse had been consensual). However, to the extent *Romero* suggests that evidence of prostitution is relevant whenever a defendant contends that the intercourse with the defendant was itself an act of prostitution, it is overruled. The evidence offered should be relevant to a defense theory other than a theory based on propensity, because the factfinder should determine the defendant's guilt or innocence based on the particular encounter for which the defendant was charged. *Cf.* Rule 11–404(B) NMRA 1997 (making evidence of other crimes inadmissible "to show action in conformity" but permitting its use for other purposes, such as proof of motive or intent). *Id.*

#### D. *Application of Law to Facts*

■ 35. Defendant did not specify any valid reason why the sexual histories of the victim-witnesses were relevant. Defendant's written motion in limine to the trial court stated:

> Defendant has reason to believe that the alleged victims in this matter had engaged in sexual conduct prior to the incidents alleged in the indictment, which conduct is material and essential to the defense against those charges.... The probative value of the conduct outweighs the inflammatory or prejudicial nature of its revelation.

Nowhere in his motion did Defendant state that he wished to proffer this evidence to show that the victim-witnesses had a motive to fabricate.

36. Prior to trial, Defendant asked the court to hold an in camera hearing at which he would show evidence of the victim-wit-

nesses' prior sexual conduct and its relevance to his defense. The trial court asked Defendant why he believed he was entitled to have this evidence admitted. Defense counsel told the court:

> The evidence which we would seek to elicit by questioning first the women themselves and then from other witnesses, as well, is the fact that at least two of the women— one woman is known to the police as a prostitute and, in fact, been arrested as a prostitute. Another woman admitted to the detective investigating the case that she had engaged in prostitution at the time this occurred, was in the habit of, if not gaining her income, at least supplementing it by prostitution. That is essentially the nature of the evidence which we want to go into.

Defense counsel further stated that he would distinguish between "amateurs" and "professionals and patrons" (apparently of prostitutes) and that such a distinction would be highly relevant and admissible.

■ 37. In its opinion, the Court of Appeals noted that "defense counsel did not use the phrase 'motive to lie' when he argued to the trial court in favor of admission of corroborating evidence that the women were 'prostitutes.'" *State v. Johnson*, 1995 NMCA 170, ¶ 6. However, the Court of Appeals "believe[d] that his arguments that the participants had a difference of opinion as to remuneration for the sexual services performed pursuant to their 'contract' were adequate to alert the trial court to the basis for Defendant's proffer." *Id.* We disagree. We have reviewed the transcript record of the hearing on the motion in limine and of cross-examination during trial. We conclude that Defendant never expressed his intention to use the prior sexual conduct evidence to expose the victims' motives to lie or as a basis for a theory of relevance other than propensity.

38. The possibility that T.A. and T.S. had engaged in prostitution either before or after the incidents in question does not support an inference that they had a reason to fabricate an accusation of rape. Defendant sought to introduce testimony that T.A. had admitted to the police that she had occasionally sold sex for money to pay the rent. Defendant also sought to introduce evidence that T.S. had been arrested on a prostitution charge subsequent to his arrest for sexual assault. This evidence does not show that either would retaliate against those who failed to pay her by fabricating false charges.

■ 39. From the record, we are not certain that Defendant had a theory of relevance other than one based on propensity. Defendant indicated that he wanted to bring in evidence of prior acts of prostitution to show it was more likely than not that each woman got into his car willingly on the two occasions at issue, since "that's the nature of the business." He may have believed that, by entering his car, each woman had consented to anything he demanded. The law is otherwise. Defendant may have *believed* that the victims' apparent initial willingness to engage in a particular sexual act was a defense to his actions in insisting on a different kind of sexual act. That is not the law in this state. *Cf. Crims*, 540 N.W.2d at 865 (upholding trial court's refusal to instruct jury "that the forcible continuation of initially-consensual relations does not constitute rape").

■ 40. For these reasons, we are not persuaded that Defendant showed the trial court that the evidence was relevant, other than as an attempt to show the likelihood that the victims had consented on this occasion because they had consented on other occasions. That theory is essentially a theory the rape shield law and the consistent rule of evidence were designed to restrict. *See Hudlow*, 659 P.2d at 519. Therefore, we believe the trial court's explanation of its reasons for excluding the evidence show that it exercised its discretion and reached a result a judge reasonably might reach on the arguments and evidence. That is all we require to sustain a discretionary determination. *See generally State v. Ferguson*, 111 N.M. 191, 193, 803 P.2d 676, 678 (Ct.App. 1990) (discussing review of trial court's decision to grant new trial for abuse of discretion). Defendant failed to show that the probative value of admitting evidence of the victim-witnesses's prior acts of prostitution was equal to or outweighed its inherent prej-

udicial effect. Accordingly, we hold that the trial court did not err either in its initial ruling pre-trial, nor in its ruling during cross-examination of T.S.

## III. CONCLUSION

41. The New Mexico Legislature intended to prevent the disclosure of prior sexual conduct of victim-witnesses, including prior acts of prostitution. The resulting statute, the corresponding evidentiary rule, and subsequent cases advance the goal of protecting rape victims by prohibiting the admission of intimate details of their past sexual behavior. This intent cannot be effectuated in a manner that violates a defendant's constitutional right of confrontation. A defendant must demonstrate that prior sexual conduct is both material and that its prejudicial effect does not outweigh its probative value. Here, Defendant failed to make a sufficient showing. We conclude that the trial court did not abuse its discretion in rejecting the evidence Defendant proffered. Accordingly, we reverse and remand to the Court of Appeals with instructions to address the other issues Defendant has raised on appeal.

42. **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, SERNA and McKINNON, JJ., concur.

