This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **No. 32,856**

**SHAILA RIVERA,**

Defendant-Appellant,

and

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **No. 32,875**

**EDWIN SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett

Albuquerque, NM

for Appellant Rivera

Law Works LLC

John A. McCall

Albuquerque, NM

for Appellant Sanchez

## MEMORANDUM OPINION

**SUTIN, Judge.**

{1} A jury found Shaila Rivera and Edwin Sanchez (Defendants) guilty of multiple crimes arising out of an incident in which they acted together to beat and hogtie Heather Archuleta (Victim) and that culminated in Sanchez raping her. In separate appeals, both of which are addressed in this Opinion, Defendants seek reversal of their convictions. In their respective briefs, Defendants raise a number of identical issues related to various evidentiary rulings made by the district court. Additionally, Rivera argues that the court erred in precluding her from presenting evidence that Victim was a police informant and that the court erred by not allowing her counsel to explain to the jury why she used a cell phone during trial. Sanchez argues that the district court made additional erroneous evidentiary rulings, that his right to be free from double jeopardy was violated, that the court erred in denying a proffered jury instruction, that

he received ineffective assistance of counsel, and that he was prejudiced by cumulative error.

**{2}** We conclude that none of the issues raised by Defendants in their respective appeals demonstrates error. We affirm Defendants' convictions.

**BACKGROUND**

**{3}** The sufficiency of the evidence presented by the State to support Defendants' convictions is not attacked on appeal, accordingly, we present an abbreviated statement of the relevant background facts only to provide context for our discussion.

**{4}** Victim and Defendants first met at a friend's house in 2008. Approximately two years later, Rivera and Victim became friends, and after "hanging out" together for about three days, Rivera invited Victim to live with her and Sanchez after Victim and Victim's sister had a fight. Victim lived with Rivera and Sanchez for three days when Rivera told Victim that she could only continue living with her and Sanchez if Victim agreed to a "threesome." Victim's friend, Matthew Padilla, overheard Rivera's ultimatum to Victim, and because Victim did not want to have a threesome with Defendants, Padilla invited Victim to live with him instead. Victim moved into Padilla's home and soon Victim and Padilla became a couple.

**{5}** The events at issue in this trial began with the exchange of text messages on September 26, 2010, between Victim's phone and Sanchez's phone that were initiated

by Sanchez's offer to help Victim if she ever needed anything. When Sanchez's initial text message was sent to Victim's phone, Padilla had the phone, and Victim was out of the room. Posing as Victim and using Victim's phone, Padilla responded to Sanchez's text message and asked Sanchez for an $80 loan. When Padilla told Victim that he was trying to get Sanchez to give Victim $80, Victim joined Padilla in texting Sanchez. What followed was a text message exchange during which, among other things, Padilla and Victim concocted a false story about Victim having borrowed money from someone that she was afraid of and that she needed Sanchez to quickly loan her $80 so that she could pay the alleged imaginary debt. Eventually Sanchez invited Victim to his house to collect the $80.

{6} Padilla drove Victim to Defendants' house and parked out of sight with instructions from Victim to follow Defendants' vehicles if either left the house. When Victim was inside the house, Sanchez grabbed her and said "now," and Rivera came out of the back room. Together, Defendants beat Victim, threw her to the ground, and stripped her. Rivera held Victim down while Sanchez got some rope and "hogtied" Victim. After Victim was hogtied, both Defendants digitially penetrated Victim's vagina. Sanchez retrieved a gun from his truck and hit Victim in the head with it. Sanchez then carried Victim, who was still naked and hogtied, to his truck. Rivera

instructed Sanchez to "get rid of" and "dump" Victim, and she announced that she would shampoo Victim's blood out of the carpet.

{7} Sanchez drove away from the house with Victim in his truck, and when he saw Padilla's car, he threatened to shoot both Victim and Padilla in the head if Victim "[made] a move." Padilla began following Sanchez's truck, but he got pulled over by the police because his car had a broken headlight. Sanchez drove Victim to a rest area in Ojo Caliente where he raped her. After the rape, Sanchez told Victim that because "there was something about" Victim, he could not kill her but he used his cell phone to photograph her. He told Victim that he was going to keep the photograph, and if he heard anything about what had happened, he would send her the photograph to remind her of what could happen. Sanchez gave Victim her clothes but he kept her cell phone and dropped her off on the side of the road in the vicinity of Victim's friend's house.

{8} Defendants were tried together before a jury for a number of crimes arising out of this incident. Sanchez was convicted of two counts of second degree criminal sexual penetration, contrary to NMSA 1978, Section 30-9-11(E)(3) (2009), aggravated battery without great bodily harm, contrary to NMSA 1978, Section 30-3-5(A), (B) (1969), kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(3) or (4) (2003), conspiracy to commit aggravated battery inflicting great bodily harm or with a deadly weapon, contrary to NMSA 1978, Section 30-28-2(A), (B)(3) (1979) and Section 30-

3-5(C), and interference with communications, contrary to NMSA 1978, Section 30-12-1(D) (1979). Rivera was convicted of aggravated battery without great bodily harm, contrary to Section 30-3-5(A) and (B), conspiracy to commit aggravated battery inflicting great bodily harm or with a deadly weapon, contrary to Section 30-28-2(A), (B)(3) and Section 30-3-5(C), assault, contrary to NMSA 1978, Section 30-3-1(B) (1963), tampering with evidence, contrary to NMSA 1978, Section 30-22-5(A), (B)(1) (2003), and kidnapping, contrary to Section 30-4-1(A)(3) or (4).

{9} Defendants appeal their convictions, and we address both appeals in this Opinion. Defendants claim that the district court abused its discretion in a number of its evidentiary rulings. We conclude that Defendants' evidentiary issues do not demonstrate an abuse of discretion by the district court. Additionally, Rivera argues that she was prejudiced by the district court's decision to not permit her to explain to the jury why she was looking at a cell phone during trial. And Sanchez additionally argues that he was prejudiced by the court's denial of a requested jury instruction, that he received ineffective assistance of counsel, that his convictions violated double jeopardy, and that cumulative error warrants reversal of his convictions. We conclude that Defendants' respective arguments do not demonstrate grounds for reversal.

# DISCUSSION

## I.    Evidentiary Issues

{10}    As to the evidentiary issues raised by both Defendants, we consider their arguments together. Arguments raised by one Defendant but not the other are addressed in separately denoted sections.

{11}    We review evidentiary issues for an abuse of discretion. *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

### A.    Evidentiary Issues Raised by Both Defendants

### 1.    Victim's Sexual History

{12}    New Mexico has a "strong public policy . . . to prevent unwarranted intrusions into the private affairs of victims of sex crimes[,]" and "trial courts should remove from the jury the temptation to pass judgment upon rape victims whenever possible." *State v. Johnson*, 1997-NMSC-036, ¶ 21, 123 N.M. 640, 944 P.2d 869 (internal

quotation marks and citation omitted). New Mexico's rape shield statute, NMSA 1978, § 30-9-16(A) (1993), provides that

> [a]s a matter of substantive right, in prosecutions [of criminal sexual offenses], evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct[,] or of reputation for past sexual conduct, shall not be admitted unless[] and only to the extent that the court finds that[] the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Such evidence is also generally precluded by Rule 11-412(A)(1) NMRA, pursuant to which evidence offered to prove that a victim engaged in other sexual behavior is not admissible in a criminal proceeding involving sexual misconduct except where it is material and relevant, and it is more probative than prejudicial. *See* Rule 11-412(B), (C) (stating the exception to the general rule of inadmissability and the procedure used to determine admissibility). The rape shield law and corresponding rule apply to all sexual conduct. *Johnson*, 1997-NMSC-036, ¶ 19.

{13} Prior to trial, Sanchez filed a motion by which he sought to introduce evidence that Victim, who was almost twenty years old when she was attacked by Defendants, had, when she was thirteen years old, reported that she was raped and that the police report from the rape indicated that Victim had suffered injuries to the back of her head. In the present case, Victim reported to police that she had been hit on the back of the head during the attack, but her hospital records did not reflect any head injury. Sanchez's counsel theorized that because of the prior rape, Victim might have hyper-

8

reacted to Defendants' attack of her, and she might believe that something happened in this case that actually did not. Thus, Sanchez's counsel argued the prior rape was relevant to Victim's credibility and memory and to Sanchez's defense. The district court concluded that there was not enough similarity between the prior rape and the attack here to support the defense theory that "this whole thing is a flashback," and therefore, evidence of the prior rape would be admitted only if Victim brought it up. On appeal, Defendants argue that the district court abused its discretion in excluding the evidence of Victim's prior rape.

{14} Rivera argues that evidence of the prior rape was relevant to Victim's credibility, but Rivera does not argue that the evidence was material to the charges or that its probative value outweighed any prejudicial effect as required for admissibility under Section 30-9-16(A) or Rule 11-412(B). As such, Rivera has failed to establish that the court erred in its determination that the evidence of the prior rape was not admissible. *See Johnson*, 1997-NMSC-036, ¶ 1 (stating that where the defendant has failed to demonstrate that evidence of the victim's prior sexual conduct is material and that it is more probative than inflammatory or prejudicial, the rape shield law and corresponding rule preclude its admission).

{15} Sanchez argues that the prior rape was "a traumatic experience which was sufficient to cause [post-traumatic stress disorder or] PTSD that arguably had an effect

on [Victim's] mental state" and that the jury should have considered "[t]he implication that [Victim] may have suffered from PTSD from her prior rape which may have affected her state of mind concerning her alleged head injury[.]"

{16}     Sanchez's argument resembles the argument raised by the defendant and rejected by this Court in *State v. Hueglin*, 2000-NMCA-106, ¶ 25, 130 N.M. 54, 16 P.3d 1113. In *Hueglin*, the defendant, who was appealing his criminal sexual penetration convictions, argued that the district court abused its discretion by prohibiting him from inquiring into the victim's sexual history, specifically an alleged prior rape. *Id.* ¶¶ 1, 25. The defendant argued that he wanted to inquire into the earlier rape because he believed that "it actually occurred and that [the v]ictim was somehow recalling the violence of that rape and applying it to her encounter with [the d]efendant." *Id.* ¶ 26 (alteration and internal quotation marks omitted). The defendant did not provide expert testimony to support his theory. *Id.* This Court held that the district court did not abuse its discretion in prohibiting the defendant's inquiry into the alleged prior rape because "[i]n the absence of expert testimony explaining how the prior incident would have affected [the v]ictim's recollection of her encounter with [the d]efendant, [the d]efendant would have been inviting the jury to engage in speculation based on lay psychology." *Id.*

10

**{17}** Here, as in *Hueglin*, Sanchez's argument is not supported by expert testimony. Thus, like the defense theory in *Hueglin*, Sanchez's theory that Victim suffered PTSD from the alleged prior rape that may have affected her testimony in the present case is mere speculation grounded in lay psychology. On this record, we cannot conclude that the district court erred in denying Sanchez's motion to present evidence of Victim's alleged prior rape.

**{18}** Defendants also argue that the district court erred by failing to admit evidence of Victim's sexual promiscuity, evidence that Victim had prostituted herself for drugs and money, and evidence that she had "stripped and danced around naked for cocaine at a party." Rivera makes the generalized assertion that the foregoing evidence was relevant to Victim's "bias and credibility[,]" and Sanchez argues that evidence of Victim's "past sexual history . . . was integral to the [d]efense's premise that the sex between [Victim and Sanchez] was not nonconsensual." Defendants also argue that the at-issue evidence was relevant to rebut Victim's testimony that she was not the "type of girl" to have sex with Sanchez.

**{19}** From Defendants' briefing, we understand their shared theory of relevance to be that Victim's sexual history was relevant and admissible to support a theory that either, in accordance with her alleged history of prostitution, Victim prostituted herself to Sanchez, or consistent with her reputation for promiscuity, she engaged in

11

consensual sex with him. Neither theory supports admissibility of evidence of Victim's past sexual conduct in the context of this case. *See* § 30-9-16(A); Rule 11-412(B).

**{20}** In order to introduce evidence of Victim's alleged prior acts of prostitution, her character for unchastity, or her sexual propensities, a defendant must make a showing that there is evidence to support a theory of fabrication. *See Johnson*, 1997-NMSC-036, ¶¶ 8, 11, 39. The possibility that a sexual assault victim may have engaged in prostitution on other occasions does not support an inference that she had a reason to fabricate an accusation of rape. *Id.* ¶ 38. For evidence of a victim's sexual history to be relevant in a rape case, "[t]he evidence offered should be relevant to a defense theory other than a theory based on propensity[.]" *Id.* ¶ 34. In the present case where the only theory of relevance was Victim's alleged propensity toward prostitution or promiscuity, the district court did not abuse its discretion in ruling that Victim's sexual history was inadmissible.

**{21}** On a final note regarding Victim's sexual history, we observe that Defendants invoke the Confrontation Clause in their arguments pertaining to the admissibility of this evidence for the first time on appeal. Defendants fail to demonstrate whether and if so how they preserved any argument at trial that their confrontation rights were implicated by the district court's decision not to admit evidence of Victim's sexual

history. *See* Rule 12-213(A)(4) NMRA (requiring the appellant's brief in chief to include a statement of preservation as to each issue raised, along with citations to the proceedings below); *State v. Garcia*, 2013-NMCA-005, ¶ 9, 294 P.3d 1256 (recognizing that the appellate court is not required to consider unpreserved constitutional arguments); *State v. Romero*, 2013-NMCA-101, ¶ 19, 311 P.3d 1205 (stating that filing a motion for a new trial does not constitute preservation). As such, we do not consider Defendants' Confrontation Clause arguments. *See State v. Montoya*, 2014-NMSC-032, ¶¶ 14-15, 333 P.3d 935 (stating that when a defendant's evidentiary challenge in the district court is based on constitutional rights to confrontation, the appellate court conducts a de novo review; otherwise, the appellate court reviews the issue for an abuse of discretion). We conclude the district court did not abuse its discretion in excluding Victim's sexual history.

**2.      Prior Bad Acts**

{22}     Prior to trial, Sanchez sought permission to cross-examine Victim at trial regarding her arrest, along with Padilla, for commercial burglary pending in Rio Arriba County, as well as charges pending in Santa Fe for having allegedly stolen items from a retail store and wrecking into a vehicle during a high-speed police chase. Sanchez also sought to question Victim regarding subsequent and pending charges of

13

burglary, criminal damage to property, and conspiracy. All of the alleged incidents of Victim's criminal conduct had occurred after the events at issue in this case.

{23} Rule 11-404(B) NMRA provides that admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that[,] on a particular occasion[,] the person acted in accordance with the character" is prohibited; however, such evidence may be admissible to prove motive, opportunity, intent, preparation, or plan. Rule 11-608(B)(1) NMRA provides that a witness's character for truthfulness may be attacked on cross-examination by inquiring into specific instances of a witness's conduct.

{24} Relying on Rules 11-404(B) and 11-608(B)(1), Sanchez argued at trial that inquiry into these various alleged crimes was permissible during his cross-examination of Victim to support his theory that Victim and Padilla were teamed up and were trying to perpetrate a crime against Defendants by luring them to an ATM in order to "shake them down" for money, as well as to show that Victim and Padilla engaged in a pattern of criminal conduct, and therefore they were not credible. The district court concluded that owing to the lack of similarity between the alleged act of committing a commercial burglary and the defense theory that Victim and Padilla were trying to "trick a friend or an ex-friend out of money," Rule 11-404(B) did not permit the inquiry. The district court also concluded that the inquiry was not

14

permissible under Rule 11-608(B)(1) because (1) Victim had not been convicted of the crimes and therefore could not be impeached with convictions under Rule 11-609 NMRA; and (2) Victim would not admit under oath to having committed the charged crimes, thus the inquiry would serve only to inform the jury of the alleged crimes and would therefore have a prejudicial effect that outweighed its probative value. *See* Rule 11-609 (stating the circumstances under which a witness may be impeached by evidence of a criminal conviction); *see also* Rule 11-403 NMRA (stating that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

**{25}** On appeal, Defendants abandon their Rule 11-404(B) argument and argue only that the district court erred in prohibiting Sanchez from inquiring into Victim's alleged crimes pursuant to Rule 11-608(B). In support of their argument that Victim's "specific instances of misconduct" that led to her arrest were permissible subjects of cross-examination, Defendants cite *State v. Wyman*, 1981-NMCA-087, 96 N.M. 558, 632 P.2d 1196.

**{26}** In *Wyman*, this Court held that the district court did not err in permitting the prosecutor to ask whether the defendant had committed a number of criminal acts when he was a child. *Id.* ¶¶ 1-9. Although Rule 11-609 prohibits evidence of a defendant's juvenile adjudication, the Court reasoned that because no extrinsic

evidence of the adjudications was presented, Rule 11-609 did not apply; rather, Rule 11-608 applied, and pursuant to that rule, the prosecutor's inquiry into the defendant's specific conduct was permissible. *Id.* ¶¶ 8-9.

{27}     *Wyman* is not persuasive authority in the context of this case. Here, unlike *Wyman*, Victim had been accused but not adjudged guilty of having committed certain acts of conduct that Sanchez sought to raise on cross-examination. This is significant because "[i]n considering the character of the prior conduct, the trial court must take care to distinguish actual misconduct from a mere accusation of misconduct" because "the only relevant circumstance is . . . the fact, not the mere charge, of having misbehaved." *State v. Robinson*, 1983-NMSC-040, ¶¶ 5-6, 99 N.M. 674, 662 P.2d 1341. Since Victim had been accused but not adjudged guilty of having committed the alleged crimes, the district court did not abuse its discretion in determining that Sanchez could not inquire into the alleged acts. *See State v. Herrera*, 1985-NMSC-005, ¶ 20, 102 N.M. 254, 694 P.2d 510 ("The test is not whether the witness sought to be impeached was arrested or charged with the misconduct but whether the witness actually engaged in the misconduct. . . . [B]eing arrested, charged, or being a suspect is not a prior act of misconduct." (citation omitted)).

{28}     Defendants also argue that the district court erroneously prohibited the introduction of evidence that Victim had committed the "prior bad act" of soliciting

16

Sanchez to commit robbery. Defendants fail to provide record citations to demonstrate preservation of this issue, Sanchez's citations to an August 16th hearing do not correspond with any hearing in the record proper, and Defendants fail to develop arguments indicating what the evidence was, or how such evidence was to be presented. This unclear, undeveloped, and apparently unpreserved argument will not be considered. *See* Rule 12-213(A)(4) (requiring a statement of preservation and citations to the record proper as to each argument raised in the brief in chief); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.2d 1181 (declining to consider an evidentiary argument that was factually undeveloped and unclear).

**3.      Character Evidence**

{29}    Defendants argue that the district court erred in not allowing them to present evidence of Padilla's history of violence toward women that would have supported the defense theory that Victim's injuries were the result of Padilla instead of Defendants. Although Rivera does not present any authority in support of this argument, Sanchez argues that the evidence was admissible pursuant to Rule 11-404.

{30}    Rule 11-404(A)(1) prohibits the admission of evidence of a person's character to prove that on a particular occasion the person acted in accordance with the character or trait. However, Rule 11-404(B)(2) allows such evidence to be used for another purpose such as proving motive or opportunity. In the present case, Sanchez asserts

17

that he intended to present evidence of Padilla's history of violence toward women to prove that Padilla had an "opportunity and motive" to beat Victim but his assertion is not supported by any rational explanation of how Padilla's historical treatment of women would be relevant to that theory. Rather, Sanchez intended to use Padilla's history to attempt to persuade the jury that, in accordance with his character trait of being violent toward women, he could have beaten Victim and caused the injuries at issue in the present trial. Our conclusion is supported by Sanchez's own assertion that the evidence was probative of Padilla's "habit, pattern, practice, and opportunity to beat and injure [Victim]." As such, pursuant to Rule 11-404(A)(1), the evidence of Padilla's history of violence toward women was not admissible.

**4.      Rivera's Cell Phone**

{31}     On the third day of trial, the district court informed the parties that more than one juror had told the bailiff that they had observed Rivera using a cell phone during the trial. For approximately half an hour, outside of the jury's presence, the court and the parties discussed Rivera's use of the cell phone, as well as her subsequently showing whatever was on the phone to Sanchez, and how to handle the issue going forward. Finally, the court and the parties agreed to remove the battery and return the cell phone to Rivera. In the course of the discussion, Rivera's counsel informed the

18

court that he had just learned that the phone contained information that he wanted to use at trial.

{32} Rivera testified at trial. Her counsel presented her with the cell phone so that she could refresh her recollection about text messages sent to her by Victim. Rivera then testified that Victim had sent two text messages to her, one stating, "I like you" and another stating, "Maybe you can sleep with me tonight." Following that testimony, Rivera's counsel moved to admit the cell phone into evidence, and the court denied the motion stating that its reason for doing so was counsel's late disclosure of the evidence. Neither the phone nor its content had been disclosed to the State by the defense.

{33} On appeal, Defendants argue that the district court erred by not admitting the cell phone into evidence. Pursuant to Rule 5-502(A)(1) NMRA, Rivera had a duty to disclose the "tangible objects" that she intended to introduce into evidence at trial. This duty also applies to any evidence discovered during trial. *See* Rule 5-505(A) NMRA. Where a party fails to abide by Rule 5-505(A), the district court may, as the court did here, prohibit the introduction of the undisclosed evidence. Rule 5-505(B). Sanchez's counsel stated in court that she "had the phone and . . . gave it back to Rivera today [April 11, 2012]." Therefore, the record reveals that Rivera's counsel purportedly learned of the text messages on the cell phone on April 11, 2012, five

19

days before he sought to introduce them at trial on April 16, 2012. Defendants offer no explanation or excuse to explain why, within the five day interim, defense counsel did not disclose the cell phone or its contents to the State as required by Rule 5-505(A). We see no reason to conclude that the court abused its discretion by prohibiting Rivera's counsel from entering Rivera's cell phone into evidence.

{34}     Sanchez argues that the State improperly withheld the text messages on Rivera's cell phone from the defense, thereby committing prosecutorial misconduct. Sanchez's argument was raised for the first time on appeal and therefore will not be considered. Furthermore, the State represented at trial that it was the defense that failed to disclose the evidence, which is supported by the record.

**5.     Investigator Tim Dabbs's Testimony**

{35}     Defendants argue that the district court erred in sustaining the State's objection to the testimony of Investigator Dabbs regarding his experiment with and observations about the rope that Defendants used to "hogtie" Victim during the attack. Neither Defendant provides citations to the record showing where in the proceedings they sought to introduce Investigator Dabbs's testimony in that regard, what the arguments were in support of or in opposition to the testimony, or where the court's ruling may be found. We will not review this issue. *See State v. Dominguez*, 2014-NMCA-064,

20

¶ 26, 327 P.3d 1092 (recognizing that this Court will not search the record for facts, arguments, and rulings that may support a party's arguments).

## 6.   Photographs

{36}   Defendants argue that the district court erred in admitting printed photographs of Victim's injuries because the photographs had been "digitally enhanced" or "digitally altered" in a way that made the injuries appear worse than they actually were. Building on that premise, they argue further that the photographs were not "originals" admissible pursuant to Rule 11-1002 NMRA, but were instead, inadmissible distortions. *See id.* ("An original . . . photograph is required in order to prove its content[.]"). Defendants fail to cite any evidence in the record demonstrating support for their argument that the photographs had been enhanced or altered. Counsel's arguments to that effect in the district court are not evidence. *State v. Hanson*, 2015-NMCA-057, ¶ 15, 348 P.3d 1070 ("[T]he mere assertions and arguments of counsel are not evidence[.]" (internal quotation marks and citation omitted)).

{37}   Victim testified that the photographs accurately reflected her injuries and her appearance when the photographs were taken at the hospital. The Rules of Evidence provide that a photograph printed from its original form constitutes an "original" of that photograph. Rule 11-1001(D) NMRA. Because Defendants fail to demonstrate

support for their argument that the photographs were other than printed forms of the original images, we cannot conclude that the district court abused its discretion in admitting them.

**7.    Cumulative Testimony**

{38}    Detective Brian Martinez of the City of Espanola Police Department and Victim's mother, Melba Trujillo, testified regarding statements that Victim made at the hospital about the incident. Defendants argue that because Victim had already testified about the incident, the district court abused its discretion under Rule 11-403 by admitting the testimony which, in their view, was cumulative and overly prejudicial. Sanchez also argues that the testimony improperly bolstered Victim's credibility.

{39}    Pursuant to Rule 11-403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." The application of Rule 11-403, including the decision whether to admit cumulative evidence, is left to the sound discretion of the district court. *See State v. Aaron*, 1984-NMCA-124, ¶ 28, 102 N.M. 187, 692 P.2d 1336 ("Cumulative evidence, even if prejudicial, may be admitted in the discretion of the trial court.").

22

{40} The district court concluded that Detective Martinez's and Trujillo's testimony was not cumulative, but that it was admissible to rebut the implied charge, raised by defense counsel during cross-examination of Victim, that Victim was fabricating her testimony. *See* Rule 11-801(D)(1)(b) NMRA (stating that testimony that is consistent with the declarant's testimony and "is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying" is admissible). The court also reasoned that because Victim had been, in the court's words, "cross-examined heavily" and because the veracity of Victim's testimony was "the actual substance of the case," Detective Martinez's testimony was not cumulative.

{41} "Cumulative evidence is additional evidence of the same kind tending to prove the same point as other evidence already given[.]" *State v. Johnson*, 2004-NMSC-029, ¶ 38, 136 N.M. 348, 98 P.3d 998 (internal quotation marks and citation omitted). However, "[t]o the extent [that] the evidence corroborates, and therefore strengthens, the prosecution's evidence, it cannot be deemed cumulative[.]" *Id.* ¶ 37 (internal quotation marks omitted). In the present case, Detective Martinez's and Trujillo's testimony was cumulative in the sense that it tended to prove the same point as Victim's testimony. However, because the testimony corroborated and strengthened Victim's testimony by showing that she had made prior statements that were

consistent with her testimony thereby rebutting defense counsel's implication that Victim's testimony was fabricated, we cannot conclude that it was cumulative or "needlessly presenting cumulative evidence" as contemplated by Rule 11-403. *See Johnson*, 2004-NMSC-029, ¶ 37 (stating that the district court may exclude relevant evidence on the ground that it constitutes the needless presentation of cumulative evidence). As such, the district court did not abuse its discretion by admitting the testimony.

**{42}** Finally, as to Detective Martinez's and Trujillo's testimony, we are not persuaded by Sanchez's argument that it improperly bolstered Victim's credibility. While it is not permissible to allow a witness to directly comment on a victim's credibility, incidental verification of her story or indirect bolstering of her credibility is not improper. *State v. Alberico*, 1993-NMSC-047, ¶ 89, 116 N.M. 156, 861 P.2d 192. Neither Detective Martinez nor Trujillo improperly bolstered Victim's testimony by directly commenting on Victim's credibility.

**II.     Arguments Raised Only by Rivera**

**1.      Evidence That Victim Was a Police Informant**

**{43}** Rivera claims that "[t]he [d]efense was precluded from introducing evidence that [Victim] was an informant for the police even though the police officer for whom she worked was the investigator on this case and supported her testimony by testifying

24

that it was corroborated by the evidence." Rivera does not provide any argument or authority to support a contention of error in this regard, and we will not guess at what her argument may be. *State v. Bernard*, 2015-NMCA-089, ¶ 35, 355 P.3d 831 ("We will not review unclear arguments[] or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). We will not consider this issue.

## 2. Whether Rivera Should Have Been Permitted to Explain Why She Used a Cell Phone During Trial

{44}     Rivera also argues that because she was not permitted to explain to the jury why she and Sanchez were using a cell phone during trial, the jury "was left with an impression of frivolity or lack of decorum that in all probability tainted [its] view of Defendants and improperly influenced [its] verdict." Defendants do not challenge the sufficiency of the evidence that supported the jury's guilty verdicts. In light of the overwhelming evidence that Defendants acted together to attack and hogtie Victim before Sanchez raped her, we will not assume, as Rivera suggests, that had Rivera been permitted to explain why she and Sanchez used a cell phone during trial the outcome of the trial would have been different. Rivera's argument provides no ground for reversal in the context of this case.

25

## III.    Issues Raised Only by Sanchez

### 1.    The Content of Sanchez's Cell Phone Records

{45}    Sanchez sought to introduce the content of his cell phone records into evidence via the testimony of Investigator Dabbs. The district court concluded that Investigator Dabbs was not qualified to authenticate the phone records, and therefore he could not testify as to the content of the records. Sanchez argues that the records were admissible under Rule 11-803(6) NMRA and that the district court abused its discretion by concluding otherwise.

{46}    Rule 11-803(6), governing the admissibility of records of a regularly conducted activity, provides that a record of an act or condition is admissible if:

> (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge,
>
> (b) the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit,
>
> (c) making the record was a regular practice of that activity, and
>
> (d) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification[.]

{47}    Sanchez argues that Investigator Dabbs, "being an investigator familiar with obtaining cell phone records and the substance of cell phone records, would have been able to authenticate [Sanchez's cell phone] records as accurate cell phone records kept

26

in the course of business by the company Cricket wireless." In order to provide a foundation for the admission of business records, the witness must at least have personal knowledge of the system by which the record is generated in order to testify that the record was generated in keeping with a regular business practice. *Roark v. Farmers Group, Inc.*, 2007-NMCA-074, ¶¶ 24-29, 142 N.M. 59, 162 P.3d 896. We are not persuaded that Investigator Dabbs's experience obtaining cell phone records or his familiarity with the substance of cell phone records qualified him to be a foundation witness for the admission of Cricket's business records.

{48}     To the extent that Sanchez provides additional rationale for the records' admissibility based upon another witness's testimony about some aspect of the records, we decline to review this argument owing to Sanchez's failure to provide record citations supporting his contentions. *See* Rule 12-213(A)(4) (requiring an appellant to provide citations to the record proper in support of each argument raised in his brief in chief); *Dominguez*, 2014-NMCA-064, ¶ 26 (recognizing that this Court will not search the record for facts, arguments, and rulings that may support a party's arguments).

**2.     Cross-Examination of Detective Martinez**

{49}     Sanchez also argues that he was denied his right to confront and cross-examine Detective Martinez by asking him on cross-examination whether, during his

27

investigation, he initially believed that Victim was prostituting herself and that something had gone wrong in a "threesome" that Victim was having with Defendants. Sanchez fails to cite to the record proper in support of this argument or to demonstrate preservation, and we will not search the record on his behalf. *See* Rule 12-213(A)(4) (requiring the appellant's brief in chief to contain citations to the record proper indicating preservation of each issue raised, as well as record citations relied on).

**3.      Victim's Physical Condition During Trial**

{50}      Sanchez argues that he was unduly prejudiced by Victim's unexplained physical condition at trial. According to Sanchez, during trial, Victim's face was swollen and bruised, and her nose was injured. According to the State, Victim's nose was swollen. Sanchez sought to cross-examine Victim about the condition of her face, and in response to an objection by the State, the district court prohibited Sanchez from doing so. The court determined that the question was irrelevant and that it could cause Victim to relate the prejudicial fact that she was then in jail because the injury was the result of a jail fight.

{51}      On appeal, Sanchez argues that the district court "effectively condoned the likelihood of the jury being misled by the lack of explanatory evidence regarding [Victim's] more recent injuries[.]" We disagree. Victim testified in the present case on April 9-10, 2012. The jury was instructed that Sanchez's alleged crimes against

28

Victim occurred "on, or about, or between" September 26, 2010, and September 27, 2010. Victim testified that it took two to three weeks for the injuries that she sustained as a result of Defendants' having attacked her to heal completely and specifically testified that her broken nose had healed within three weeks. Thus, within the context of this case, we are not persuaded that the jury would have mistaken the injuries that Victim exhibited at the time of trial as the effect of Defendants' attack on her nineteen months earlier. As such, we conclude that the district court did not abuse its discretion in determining that Victim's appearance at trial was not relevant in the present case.

**4.      Jury Instruction Issue**

{52}      Sanchez argues that the district court erred in denying a proposed jury instruction regarding the testimony of a drug user. Sanchez fails to cite to the record proper in support of his argument or to demonstrate preservation of this issue. *See* Rule 12-213(A)(4) (requiring the appellant to cite to the record proper and to demonstrate preservation in regard to each issue raised in his brief in chief). As such, we will not consider this issue.

## 5.    Ineffective Assistance of Counsel

**{53}**    Sanchez also argues that he received ineffective assistance of counsel because his counsel did not cross-examine Victim as to her sexual history. As discussed in an earlier section of this Opinion, Sanchez's counsel pursued a motion to cross-examine Victim as to her sexual history but the district court denied the motion. In light of the court's ruling, we fail to see how Sanchez may reasonably argue that his counsel was ineffective for failing to cross-examine Victim regarding her sexual history. Although Sanchez reframes the issue in his reply brief by arguing that his counsel was ineffective for failing to file an adequate rape shield "notice," the record does not support the notion that the adequacy of the rape shield notice affected the district court's ruling. Under the circumstances of this case, Sanchez's ineffective assistance of counsel claim is unpersuasive, not supported by the record, and we will not consider it further.

## 6.    Double Jeopardy

**{54}**    "A double jeopardy challenge is a constitutional question of law [that] we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. "The constitutional prohibition against double jeopardy protects against . . . multiple punishments for the same offense." *State v. Mora*, 2003-NMCA-072, ¶ 17, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted). Sanchez argues that

the prohibition against double jeopardy requires reversal of one of his convictions for criminal sexual penetration in the second degree, his conviction of kidnapping, and his conviction of conspiracy to commit aggravated battery because all of those acts were subsumed by his remaining conviction of criminal sexual penetration in the second degree. Sanchez's argument boils down to an assertion that he was punished for the same conduct under multiple statutes, as such his double jeopardy argument raises a double-description issue. *See Swick*, 2012-NMSC-018, ¶ 10.

{55}　We analyze double-description issues using a two-part analysis in which we consider (1) whether the convictions were premised on unitary conduct, and if so, (2) whether the Legislature intended to punish the crimes separately. *Id.* ¶ 11. "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616.

{56}　Sanchez argues that kidnapping and conspiracy to commit aggravated battery were "predicate felonies" to the respective counts of second degree criminal sexual penetration. "As such," Defendant argues that (1) "the separate convictions for kidnapping and conspiracy to commit aggravated battery [were] 'subsumed' into the convictions for second degree criminal sexual penetration" and (2) "[t]he two

31

convictions for second degree criminal sexual penetration that remain constitute unitary conduct as a result [of] the single act of kidnapping that binds them."

{57}   We begin by addressing Sanchez's contention that kidnapping and conspiracy to commit aggravated battery were subsumed by the criminal sexual penetration convictions as predicate felonies, meaning that the two acts of criminal sexual penetration occurred "in the commission of" the kidnapping and the conspiracy, respectively. *State v. Sotelo*, 2013-NMCA-028, ¶ 19, 296 P.3d 1232 (explaining that two offenses are unitary by definition where conviction depends upon a finding that one crime occurred during the commission of another "predicate" crime).

{58}   In the case now before us, the jury was provided with alternative theories of criminal sexual penetration. One theory was that Sanchez committed the acts of criminal sexual penetration "during the commission" of a kidnapping or a conspiracy. *See* § 30-9-11(E)(5) (defining "criminal sexual penetration in the second degree" as criminal sexual penetration perpetrated "in the commission of any other felony"). The alternative theory was that Sanchez committed the acts using physical force or physical violence and that his acts resulted in physical injury to Victim. *See* § 30-9-11(E)(3) (defining "criminal sexual penetration in the second degree" as criminal sexual penetration perpetrated "by the use of force or coercion that results in personal injury to the victim"). Sanchez's convictions were premised on the theory that he

perpetrated the criminal sexual penetration by the use of physical force or violence and resulting in personal injury, contrary to Section 30-9-11(E)(3). Because Sanchez was not convicted of criminal sexual penetration committed during a kidnapping or during the commission of a conspiracy, we reject his argument that kidnapping and conspiracy were "predicate felonies" subsumed by the respective acts of criminal sexual penetration.

{59} Sanchez's next argument, that the two criminal sexual penetration convictions were unitary because a single kidnapping bound them, is equally unpersuasive. The evidence at trial demonstrated that Sanchez perpetrated the digital penetration against Victim while they were inside Defendants' house and that Sanchez raped Victim inside his truck after he carried her to the truck from the house and drove her to Ojo Caliente. Because the two acts of criminal sexual penetration were separated both by time and by the intervening event of moving Victim from the house to the truck and driving her to Ojo Caliente, they were of a different character (one digital and one penile penetration), they occurred in different places, and were not unitary. *See Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624 (stating that a temporal interval, a different location of the victim, and intervening events are indicia of non-unitary conduct in a criminal sexual penetration case and recognizing that penetrations of a different nature (digital and penile) are further indicia of distinct

33

acts); *see also Silvas*, 2015-NMSC-006, ¶ 10 (recognizing that conduct is not unitary when two actions are separated by time and place and the nature can be distinguished).

{60} In sum, Sanchez has failed to demonstrate that his separate convictions were premised on unitary conduct. As such, without considering the issue of legislative intent, we reject his double jeopardy argument. *See Swick*, 2012-NMSC-018, ¶ 11 (stating that legislative intent is only considered in cases of unitary conduct).

**7. Cumulative Error**

{61} Sanchez argues that the doctrine of cumulative error requires reversal of his convictions. Sanchez has failed to demonstrate error, and therefore, there is no basis upon which to conclude that cumulative error requires reversal in this case. *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{62} As to both Defendants, we affirm their respective convictions.

{63} **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

34

_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

35