This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. A-1-CA-34632**

**GABRIEL MONTOYA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Richard J. Knowles, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Defendant Gabriel Montoya appeals from his convictions following a jury trial for armed robbery, conspiracy to commit armed robbery, aggravated burglary, and conspiracy to commit aggravated burglary. Defendant was sentenced to twenty-six years of imprisonment, which includes two years of mandatory firearm enhancements of his sentences for armed robbery and aggravated burglary. Defendant advances the following arguments on appeal: (1) his right to be free from double jeopardy was violated by both of his conspiracy convictions as well as the firearm enhancements to his sentences for armed robbery and aggravated burglary; (2) the district court erred by not allowing a second substitution of defense counsel shortly before trial; (3) the district court erred by not granting Defendant's request for a continuance of the jury trial; (4) the district court erred by excluding the testimony of Defendant's father, Steven Montoya; (5) Defendant's right to effective assistance of counsel was violated; (6) the district court erred by denying Defendant's requested jury instruction concerning the unreliability of accomplice testimony; (7) the accomplice testimony offered by the State against Defendant was insufficient to sustain his convictions; (8) the district court erred by denying Defendant's request for a mistrial because of an alleged mischaracterization by the State in its rebuttal closing argument; and (9) the district court's cumulative errors require reversal because Defendant was deprived of his right to a fair trial.

**{2}** We agree that the State did not present evidence of separate conspiracies. Accordingly, we remand this case to the district court with instructions that it vacate one of Defendant's conspiracy convictions and resentence Defendant accordingly. For the reasons set forth herein, we are unpersuaded by Defendant's remaining arguments and otherwise affirm.

**BACKGROUND**

**{3}** Defendant, Leroy Lucero, and Harry Williams conspired to burglarize Lisa and Tristan Hawkins' home, with which Defendant was familiar and believed contained firearms, as well as a safe, cash, and tools. Dressed as a pizza delivery person, Mr. Williams knocked on the Hawkins' front door. When Ms. Hawkins answered the door and told Mr. Williams that she had not ordered pizza, Mr. Williams asked her to help him verify the address he claimed to be his intended destination. As Ms. Hawkins stepped outside to do so, Mr. Williams displayed a firearm and ordered her to go back inside. Defendant, Mr. Williams and Mr. Lucero then entered the house, ordered Ms. Hawkins to the floor, tied her up and covered her head with a jacket so she could not see.

**{4}** When she denied having the keys to the safe and that there was cash in her house, the coconspirators pistol-whipped Ms. Hawkins. They then located and stole thirty firearms, Ms. Hawkins' phone, cash, and debit cards, along with

3

various tools and videos. Both Mr. Lucero and Mr. Williams were presented by the State as witnesses during Defendant's trial.

**{5}** Because this is a non-precedential opinion drafted to inform the parties of our reasoning, we omit further factual discussion at this time and discuss only those additional facts that are necessary to our analysis.

## DISCUSSION

### I. Double Jeopardy

**{6}** We review Defendant's double jeopardy arguments de novo as a matter of law. *State v. Gallegos*, 2011-NMSC-027, ¶ 51, 149 N.M. 704, 254 P.3d 655. When "factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *Id.* (internal quotation marks and citation omitted). "The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963).

### A. One of Defendant's Conspiracy Convictions Must Be Vacated as a Violation of Defendant's Right to Be Free From Double Jeopardy

**{7}** The jury convicted Defendant of conspiracy to commit armed robbery and conspiracy to commit aggravated burglary, among other crimes. As Defendant argues and the State concedes, under *Gallegos*, the State did not present evidence of separate conspiratorial agreements as to each offense. *See* 2011-NMSC-027, ¶¶

4

42, 55, 56 (holding that there exists a "rebuttable presumption that multiple crimes are the object of only one, overarching conspiratorial agreement" and that the "presumption of singularity may [only] be overcome by [evidence] demonstrating the existence of more than one conspiracy"). Given that the evidence presented by the State at trial indicated that both conspiracies were jointly planned, and the ensuing acts of armed robbery and aggravated burglary were jointly carried out by those conspirators, including Defendant, we agree.

{8} *Gallegos* further instructs that punishment should be imposed on the "single remaining conspiracy at the level of the highest crime conspired to be committed[.]" *Id.* ¶ 64 (internal quotation marks and citation omitted). Aggravated burglary and armed robbery are both second degree felonies, so either one of Defendant's conspiracy convictions may be vacated. We therefore remand this case to the district court to vacate one of Defendant's conspiracy convictions and to resentence Defendant consistent with this determination.

**B.      The Firearm Sentencing Enhancements Do Not Violate Defendant's Right to Remain Free of Double Jeopardy**

{9}      Defendant argues that separate, one-year enhancements of his convictions for armed robbery and aggravated burglary, imposed pursuant to NMSA 1978, Section 31-18-16(A) (1993), the firearm enhancement statute, violate double jeopardy because the same conduct, Defendant's use of a firearm, violates the statutes criminalizing armed robbery and aggravated burglary and serves as the

5

factual predicate for sentencing enhancement. However, as the State points out in its answer brief, this same challenge to the firearm enhancement statute has been resolved recently by our Supreme Court in *State v. Baroz,* 2017-NMSC-030, ¶ 20, 23, 404 P.3d 769, which evaluated the applicability of double jeopardy to separate firearm enhancements for two convictions of aggravated assault with a deadly weapon stemming from the defendant's unitary act of firing a gun. *Baroz* held that "the Legislature intended to authorize greater punishment for noncapital felonies committed with a firearm[,]" and as such individual firearm enhancements do "not run afoul of double jeopardy." *Id.* ¶ 27. We therefore affirm the district court's imposition of firearm enhancements to Defendant's sentences for armed robbery and aggravated burglary.

**II.     The District Court Did Not Abuse Its Discretion by Denying a Second Substitution of Defense Counsel**

{10}     Defendant contends that the district court's refusal to allow substitution of defense counsel shortly before trial deprived Defendant of his constitutional right to conflict-free counsel in light of Defendant's attorney's (defense counsel) poor health in the months prior to trial. The State counters that both defense counsel and the attorney willing to substitute for defense counsel agreed that a substitution was not necessary, and that the district court did not abuse its discretion in denying the substitution. The State also argues that defense counsel's health does not bear the capacity to constitute a "conflict" such that substitution was required. We affirm on

6

the basis that the district court did not abuse its discretion in denying the substitution requested by Defendant.

**A.     Standard of Review**

{11}     We review the district court's decision as to whether to appoint substitute counsel for abuse of discretion. *State v. Lucero*, 1986-NMCA-085, ¶ 21, 104 N.M. 587, 725 P.2d 266. Although an indigent defendant has the right to appointed counsel, that right does not include the right to choose his attorney. *Id.* "In order to dismiss the appointed counsel, a defendant must come forward and make a showing that failure to appoint substitute counsel will result in ineffective representation or prejudice to the defense." *Id.*

**B.     Analysis**

{12}     In March 2014, approximately seven months before trial, the district court permitted the withdrawal of two private attorneys based upon an unspecified actual conflict of interest. The district court then directed that the Law Offices of the Public Defender represent Defendant, and the following month defense counsel entered his first and only appearance for Defendant. In October 2014, and despite defense counsel not having sought to withdraw, a separate public defender contract attorney, Christopher Knight, entered his appearance for Defendant.

{13}     During a pretrial conference attended by Defendant, defense counsel, and Mr. Knight, defense counsel informed the district court that the public defender's

office had notified him that he would no longer represent Defendant, possibly because "[Defendant's] father had [spoken with the public defender's office] and made a convincing case for some problem that he had." Regarding his illness, defense counsel stated that he had been diagnosed with meningitis in July 2014, which had affected him "significantly" from July through September of that year. Defense counsel stated, "I don't like [to] try to get off cases . . . [u]nless there is a real conflict that I can't resolve with a client." Defense counsel did not move to withdraw. At no time did defense counsel claim an inability to prepare for or represent Defendant in the November trial. Also during the conference, Mr. Knight acknowledged that he was unprepared to try the case in less than a month, that defense counsel's "file [was] extremely well prepared" and "voluminous[,]" and that Mr. Knight saw no "major conflict or any other reason to go ahead and suddenly do a reassignment of an attorney."

{14}     The district court then asked Defendant if he had "any particular complaints" with defense counsel's representation. Defendant stated three concerns: (1) defense counsel had not yet filed another motion to review conditions of release; (2) Defendant heard from defense counsel's other clients that they were not satisfied and defense counsel's contact with them had been "very minimal"; and (3) on one occasion defense counsel went to the Metropolitan Detention Center to meet with Defendant but had forgotten the file for one of Defendant's other cases. Defendant

8

insisted that he was willing to remain in custody for another three or four months if necessary so Mr. Knight would have time to prepare the case for trial.

**{15}** Having noted earlier in the conference that that under Rule 5-107(B) NMRA, district courts, and not defendants or the public defender's office, decide whether an attorney on a given case may withdraw, the district court denied Defendant's request for a second substitute counsel and ordered defense counsel to continue to represent Defendant because there was no "legal basis for having [defense counsel] withdraw." The district court reasoned that defense counsel did not move to withdraw, and that while usually substitution of counsel is "liberally granted[,]" by then the case had been pending over two years, within which there had been multiple continued trial settings.

**{16}** We hold that the district court did not abuse its discretion in refusing to permit substitution of defense counsel. Defendant's stated reasons for why he wanted a new attorney in no way conveyed that defense counsel's continued representation would result in ineffective assistance or prejudice to Defendant, or touched upon the subject of any actual conflict regarding defense counsel's ongoing representation of Defendant. *See State v. Bell*, 1977-NMSC-013, ¶ 68, 90 N.M. 134, 560 P.2d 925 (holding no tenable showing of abuse of discretion when no claim of inadequate representation or prejudice to defense was made). The ongoing circumstance of Defendant's pretrial incarceration, along with defense

counsel's representation of other defendants and his isolated lapse in forgetting to bring a file on one occasion when visiting Defendant in custody, are largely irrelevant to the inquiry of whether the circumstances dictated a ruling, based on conflict, ineffectiveness of representation, or prejudice, outside the range of discretion afforded the district court. Combined with the district court's consideration of the long pendency of this case and the multiple previous trial settings, we cannot conclude the district court abused its discretion in denying a second substitution of defense counsel.

{17} Given Defendant's failure to make specific record citations regarding precisely how defense counsel's illness affected his representation of Defendant, *see State v. Lopez*, 2018-NMCA-002, ¶ 26, 410 P.3d 226 (stating that in the absence of citation to specific facts in the record, we will not search for them to support generalized arguments), we only briefly address Defendant's argument that defense counsel's health issues undermined his loyalty to Defendant, resulting in an actual conflict of interest for which prejudice to Defendant is presumed, and that the conflict prevented defense counsel from pursuing a viable defense strategy. Defendant relies on *State v. Martinez*, 2001-NMCA-059, 130 N.M. 744, 31 P.3d 1018, and *State v. Santillanes*, 1990-NMCA-035, 109 N.M. 781, 790 P.2d 1062, both of which are distinguishable from this case. The conflict of interest in *Martinez* was that the defense attorney had been implicated in the murder for

10

which he was defending his client, 2001-NMCA-059, ¶ 27, while the conflict of interest in *Santillanes* was that the defense attorney had jointly represented two brothers on the same case, and "[b]y attempting to establish a defense for co-defendant, trial counsel was forced to abandon strategy that could have been used to exonerate defendant." 1990-NMCA-035, ¶ 10. Neither of these extreme circumstances exists in this case, nor has Defendant provided a basis from which the presumption of prejudice can arise based upon an actual conflict. We affirm the district court's denial of Defendant's motion to substitute.

**III. Defendant Did Not Move to Continue the Jury Trial and Therefore Did Not Preserve His Challenge That the District Court Committed Reversible Error by Not Continuing Defendant's Trial**

{18}    Defendant argues that the district court erred in not continuing his trial because during a pretrial hearing defense counsel "appeared wholly unprepared and unaware of the substance of witness testimony he potentially intended to rely upon." He further contends that the district court erred by not clarifying whether Defendant sought a continuance. The State counters that Defendant did not seek a continuance and that this claim of error was not preserved.

{19}    Our review of the record confirms that Defendant did not request a continuance prior to trial. Although defense counsel, during a pretrial hearing, twice referenced the possibility of a continuance based on unrelated issues regarding trial witnesses, on neither occasion did he actually request one. First,

11

regarding the fact that the State had not interviewed several defense witnesses, defense counsel stated, "I can ask for a continuance in the case to complete that part of the investigation, is one possible remedy to the situation. But the other possible way we could approach it would be to attempt to at least get some of the most salient of . . . these witnesses available to the State prior to the beginning of the defendant's case and to not mention them in the opening." Second, when the State notified defense counsel that it would not call the case agent to testify, defense counsel said, "[I]t appears that if we're not going to continue the trial on the basis of this witness's unavailability . . . then our choice, really, is to move to suppress him[.]" The district court then pointed out, "*Nobody has asked me to continue* [the trial]; I'm just mentioning that. So you're going to move to suppress?" (Emphasis added.) Defense counsel responded, "Yes, [y]our Honor."

**{20}** Thus, since Defendant did not affirmatively seek a continuance of the trial setting, the issue is unpreserved and we decline to address it further. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Nor is there any duty on the part of the district court to sua sponte continue the trial, and we reject Defendant's contention that the district court should have done so or inquired in greater detail as to Defendant's position with regard to a trial continuance. *See State v. Montoya*, 1993-NMCA-097, ¶ 19, 116 N.M. 297, 861 P.2d 978 (declining to review the

district court's denial of a motion for continuance because the trial record did not show that such a motion was made to the district court and stating "[t]here is no duty upon the trial court to order a continuance when none has been requested.").

**IV.    The District Court Did Not Abuse Its Discretion by Excluding Steven Montoya's Testimony**

{21}    Defendant contends that the district court abused its discretion by excluding testimony from Defendant's father, Steven Montoya, who Defendant did not timely disclose as a defense witness and whose proposed testimony the district court determined to be inadmissible. Defendant argues that Mr. Montoya should have been permitted to testify regarding his knowledge of Mr. Hawkins, whose home Defendant and his coconspirators burglarized and who testified that he saw Defendant and Mr. Lucero together at a gas station the morning of the robbery. The State responds that Defendant twice attempted to provide proffers for Mr. Montoya's testimony during trial, and that neither proffer included anything admissible or related to Mr. Hawkins' motive to lie. Moreover, defense counsel could have, but chose not to, cross-examine Mr. Hawkins about his motive to lie rather than hope to call Mr. Montoya to testify later, so any error was harmless.

**A.    Standard of Review**

{22}    Admissibility of the testimony at issue is governed by Rules of Evidence, 11-403, 11-404, and 11-608 NMRA, a district court's application of which is reviewed for an abuse of discretion. *See State v. Torres*, 2018-NMSC-013, ¶ 58,

13

413 P.3d 467 (stating admissibility of evidence under Rule 11-608 "is left to the sound discretion of the trial court") (internal quotation marks and citation omitted); *State v. Sena*, 2008-NMSC-053, ¶ 12, 144 N.M. 821, 192 P.3d 1198 (stating same regarding Rule 11-404(B); *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 ("We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse."). A court abuses its discretion when it makes an evidentiary ruling that "is clearly against the logic and effect of the facts and circumstances of the case" and "clearly untenable or not justified by reason." *State v. Samora*, 2016-NMSC-031, ¶ 37, 387 P.3d 230 (internal quotation marks and citation omitted).

**{23}** "All relevant evidence is generally admissible, unless otherwise provided by law[.]" *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845. "Evidence that reflects on a witness['s] credibility is relevant." *State v. Johnson*, 2010-NMSC-016, ¶ 41, 148 N.M. 50, 229 P.3d 523. "Any doubt whether the evidence is relevant should be resolved in favor of admissibility." *Balderama*, 2004-NMSC-008, ¶ 23. Rule 11-403 instructs that evidence that is otherwise admissible may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, waste of time, delay, or presentation of cumulative evidence. Rule 11-404(A)(1) prescribes that "[e]vidence of a person's character or character trait is not admissible to prove that

14

on a particular occasion the person acted in accordance with the character or trait." Rule 11-404(A)(3) states that "[e]vidence of a witness's character may be admitted under Rules 11-607, 11-608, and 11-609 NMRA." Rule 11-607 instructs that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Lastly, pursuant to Rule 11-608(B)(1), cross-examination about specific instances of conduct probative of the witness's character for truthfulness is generally admissible, although extrinsic evidence is not admissible to prove such conduct.

**B.  Analysis**

{24}     Pointing to very few specifics during trial or in his briefing on appeal, Defendant argued at trial that Mr. Montoya would have testified that on one occasion he observed Mr. Hawkins act "physically aggressive toward" Defendant at Defendant's grandfather's home, which defense counsel argued was relevant to Mr. Hawkins' "motivation to have [Defendant] charged and convicted in this case" and amounted to a "potential grudge against [Defendant]." In his brief in chief, Defendant argues that Mr. Montoya wished to testify regarding Mr. Hawkins' "vindictiveness toward [Defendant,]" which related to his bias and motivation to lie, and in his reply brief added Mr. Montoya would have testified that Mr. Hawkins believed Defendant to be having an affair with Ms. Hawkins.

15

**{25}** Based upon Rules 11-404(B), 11-405, and 11-608, the State sought exclusion of Mr. Montoya's testimony, which the State characterized as evidence of a "grudge" that served as the basis for Mr. Hawkins' effort to have Defendant arrested. The State argued that based on Defendant's proffer, Mr. Montoya's testimony was irrelevant because it did not make "any matter at issue more or less . . . probative or probable." The State also argued that Mr. Montoya was disclosed late, and that during the pretrial interview, Mr. Montoya stated he did not have anything relevant to say and denied that there was anything specific about which he would testify.

**{26}** The district court ultimately excluded Mr. Montoya's testimony, not on grounds of untimely disclosure as Defendant suggests, but because Mr. Montoya's testimony was irrelevant under Rule 11-401 as extrinsic evidence concerning a collateral matter, inadmissible under Rule 11-403 because it lacked probative value, or if it had any probative value, it was minimal and "substantially outweighed by confusion of the issues[,]" and thus inadmissible under Rule 11-404(A).[1]

---

[1]The district court also observed that it was defense counsel, and not the State, that elicited the only "direct testimony from Mr. Hawkins that [Defendant] did anything" when Mr. Hawkins testified on cross-examination that he "thought [of Defendant] immediately" as the person who could have committed the robbery of his home.

16

{27} We conclude that the district court acted within its discretion when it disallowed testimony from Mr. Montoya. Testimony that Mr. Hawkins acted aggressively toward Defendant on a single occasion was minimally relevant because the testimony was not probative of Mr. Hawkins' grudge, his motive to lie, his credibility, or his character for truthfulness. Further, we agree with the district court that the de minimis probative value of this testimony was substantially outweighed by the confusion of the issues it would cause and was therefore inadmissible under Rule 11-403.

{28} We likewise conclude that Mr. Montoya's testimony was inadmissible under Rule 11-608(B). Although the district court did not refer to Rule 11-608(B) in its ruling, we may affirm the district court if it is right for any reason, and we therefore briefly evaluate the exclusion under Rule 11-608(B). *See State v. Patterson*, 2017-NMCA-045, ¶ 15, 395 P.3d 543 (analyzing admissibility of evidence under Rule 11-403 as alternative basis for its holding under right for any reason doctrine); *see also Gallegos*, 2007-NMSC-007, ¶ 26 (analyzing admissibility of evidence under theory not argued below pursuant to right for any reason doctrine as long as doing so is fair to appellant). Mr. Montoya's proposed testimony about Mr. Hawkins acting aggressively toward Defendant on a prior occasion constitutes extrinsic evidence of a specific instance of Mr. Hawkins' conduct offered to attack Mr. Hawkins' character for truthfulness, which Rule 11-

17

608(B) expressly prohibits. *See id.* ("Except for a criminal conviction under Rule 11-609 . . . extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.") The district court therefore did not abuse its discretion in excluding Mr. Montoya's testimony.

**{29}** Defendant contends that "[r]egardless of whether [Mr. Montoya's testimony] was excludable under the rules of evidence . . . the New Mexico Supreme Court has specifically recognized that the rules cannot limit a defendant's constitutional right to challenge 'an opposing version of facts[,]' " quoting from *State v. Johnson*, 1997-NMSC-036, ¶ 23, 123 N.M. 640, 944 P.2d 869. Defendant's reliance on *Johnson* is misplaced, primarily because nothing in Mr. Montoya's proposed testimony bore the capacity to directly challenge Mr. Hawkins' testimony or his credibility, and defense counsel could have cross-examined Mr. Hawkins about any bias he had against Defendant that might have affected his truthfulness. *See id.* ¶ 23 ("A defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and otherwise challenge an opposing version of facts—is a critical limitation on the trial court's discretion to exclude evidence a defendant wishes to admit."). Defense counsel provided no explanation for his decision not to cross-examine Mr. Hawkins regarding any possible

motivation he might harbor to have Defendant wrongly charged and wrongly convicted.

**{30}** Moreover, Mr. Montoya's testimony was not, as Defendant argues, crucial to Defendant's theory of the case, because nothing in Mr. Montoya's testimony would have suggested that Mr. Hawkins had a motive to lie about Defendant's involvement in the underlying crimes, and as the district court pointed out, *defense counsel* elicited the only direct testimony from Mr. Hawkins on that topic. Mr. Montoya's proposed testimony regarding a prior act of aggression by Mr. Hawkins also was not significant because both of Defendant's coconspirators testified in detail about Defendant's involvement in the crimes being considered by the jury. Even if the jury somehow believed that Mr. Hawkins' prior behavior was indicative of a preexisting grudge, which then led Mr. Hawkins to lie about his suspicion of Defendant's involvement, Mr. Hawkins was not the only witness that testified about Defendant's involvement in the underlying crimes. The district court's exclusion of Mr. Montoya's testimony did not violate Defendant's right of confrontation, and accordingly we affirm.

**V.     Defendant Has Not Presented a Prima Facie Case of Ineffective Assistance of Counsel**

**{31}** Defendant asserts that defense counsel was ineffective for four reasons: (1) he failed to impeach Mr. Hawkins with a prior criminal conviction; (2) he did not timely disclose Steven Montoya as a witness and did not understand the "full

19

extent" of his testimony until after most of the State's witnesses had testified; (3) he chose not to call Ms. Lucero, Mr. Lucero's wife, to testify; and (4) defense counsel's ill health compromised his ability to effectively represent him. The State responds that the district court's exclusion of Steven Montoya was not solely premised on his late disclosure and that Ms. Lucero's testimony would not have been useful to Defendant, and thus there was no ineffective assistance of counsel. We review appellate claims of ineffective assistance of counsel de novo. *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980.

{32} "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel." *Id.* "Our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal." *Id.* ¶ 7. "Therefore, this Court will only remand a case for an evidentiary hearing if the record on appeal supports a prima facie case of ineffective assistance of counsel." *Id.*

{33} A prima facie case of ineffective assistance of counsel requires a defendant to establish that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* ¶

20

9; *see also State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice."). To prove prejudice, a defendant "must demonstrate that counsel's errors were so serious, such [as] a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome." *Bernal*, 2006-NMSC-050, ¶ 32 (alteration, internal quotation marks, and citation omitted). If there is a "reasonable probability" that "the result of the proceeding would have been different" but for counsel's deficient performance, such a probability is "sufficient to undermine confidence in the outcome." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198, 22 P.3d 666 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

**{34}** We conclude that Defendant has failed to demonstrate prejudice, a deficiency which is fatal to his claim of ineffective assistance of counsel. First, regarding Defendant's assertion that defense counsel failed to impeach Mr. Hawkins with a prior criminal conviction, the State preemptively raised the issue outside the presence of the jury during trial, stating that while Mr. Hawkins had been a defendant in a misdemeanor attempted receiving/transferring a stolen motor vehicle case, he was not convicted and the matter had been resolved by use of a pre-prosecution probation program, and thus the matter could not properly be used

21

for impeachment purposes. Rule 11-609(A) requires evidence of a criminal conviction, and not merely evidence of a witness having been charged with a crime, to attack that witness's character for truthfulness. Here, defense counsel conceded that Mr. Hawkins had not been convicted of attempted receiving/transferring a stolen motor vehicle, and on appeal failed to explain why Mr. Hawkins' criminal case was nonetheless usable for impeachment purposes. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (holding appellate courts are not obligated to review unclear or undeveloped arguments).

{35} Second, because we have upheld the district court's ruling on the inadmissibility of Mr. Montoya's testimony, any delay in the disclosure of his identity as a witness could not have prejudiced Defendant. Third, defense counsel's decision not to call Ms. Lucero as a witness was within the bounds of trial strategy afforded to criminal defense attorneys. *See Lytle*, 2001-NMSC-016, ¶ 43 (stating that on appeal, we will not second guess the trial strategy and tactics of defense counsel). We base this conclusion on Ms. Lucero's brief testimony, given outside the presence of the jury, concerning a conversation the day of the robbery between Defendant and Mr. Lucero regarding "drugs and [her] vehicle." Mr. Lucero told Ms. Lucero that he agreed to give Defendant a ride to the Hawkins' house in exchange for drugs. Ms. Lucero did not see Mr. Lucero and Defendant leave together, nor did she hear discussions about planning a kidnapping or robbery.

22

Following her testimony, defense counsel made the strategic decision not to call her to testify.

{36} Last, as discussed previously, Defendant failed to demonstrate that he was prejudiced by defense counsel's health issues and alleged attendant lack of preparation in the months prior to trial. While nothing in our decision today prevents Defendant from pursuing a future habeas corpus proceeding based on defense counsel's constitutional effectiveness vis-à-vis his pretrial illness, we cannot make a determination of prejudice in the first instance on the record before us. *See State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068 ("If facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, Defendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues.").

{37} Because Defendant has not shown that he suffered prejudice as a result of defense counsel's representation, he has failed to establish a prima facie case of ineffective assistance of counsel, as is required in order to prevail on this issue on direct appeal. Accordingly, we decline to remand to the district court for an evidentiary hearing. *See State v. Castro*, 2017-NMSC-027, ¶¶ 35-36, 402 P.3d 688 (holding defendant's claim of ineffective assistance of counsel "more properly

23

brought through habeas corpus petition" because "there are insufficient facts in the record" without defense counsel's "response to these contentions").

**VI.  We Decline to Review Defendant's Argument That the District Court Erred by Denying Defendant's Requested Jury Instruction Concerning the Unreliability of Accomplice Testimony**

**{38}**  We decline to review Defendant's argument that the district court erred by denying Defendant's requested jury instruction concerning the unreliability of accomplice testimony for two reasons. First, the only supposedly binding authority Defendant offers in support of his argument that Defendant was entitled to a jury instruction about the unreliability of accomplice testimony is *Sarracino*, 1998-NMSC-022. Defendant's reliance on this case is mystifying because it holds that a defendant is *not* entitled to a jury instruction cautioning the jury to weigh accomplice testimony with greater care and caution than that of ordinary witnesses. *Id.* ¶¶ 8, 17.

**{39}**  Second, Defendant asserts that he sought such a jury instruction in this case, but fails to provide the text of that jury instruction or even a citation to the record showing that the jury instruction was tendered and discussed by the parties during trial. *See* Rule 12-318(A) NMRA (generally requiring record citations in appellant's brief in chief in both the summary of proceedings and in support of appellant's arguments). We are not obligated to comb the record in an attempt to find the proposed jury instruction at issue and then independently ascertain

whether this issue was preserved for review, nor are we obligated to do Defendant's research. *See Guerra*, 2012-NMSC-014, ¶ 21 (holding appellate courts are not obligated to review unclear or undeveloped arguments); *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (reminding counsel that appellate courts are not required to do the parties' research).

## VII. The Accomplice Testimony Offered Against Defendant Was Sufficient to Support His Convictions

{40} Defendant challenges the sufficiency of his accomplices' testimony as the primary basis upon which his convictions are supported. In so doing, Defendant offers no argument for why that testimony was unreliable other than the allegation that Mr. Williams and Mr. Lucero received "favorable pleas dependent upon their testimony[.]" Defendant does not provide citation to the record in support of this allegation or explain why Mr. Williams's and Mr. Lucero's pleas were more favorable than they would have been absent their agreement to testify against Defendant. The State argues that Defendant impermissibly asks us to reweigh the evidence, that Mr. Williams' and Mr. Lucero's testimony was consistent with the statements they provided to law enforcement prior to entering into their plea agreements, and that the jury had discretion to determine witness credibility.

## A. Standard of Review

{41} We review sufficiency of the evidence issues deferentially, viewing evidence in "the light most favorable to the guilty verdict, indulging all reasonable

25

inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). We "determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted).

> We will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*Id.* (alterations, internal quotation marks, and citation omitted).

**B.    Analysis**

{42}    Other than his wish that this Court will do what it has repeatedly stated it will not do—substitute our judgment for that of the jury—Defendant offers no basis to conclude that the evidence of his guilt, even though presented most directly by Mr. Williams and Mr. Lucero, is so unreliable as to be legally insufficient. First, both witnesses were questioned at length during trial regarding their plea agreements and their pre-plea agreement statements to detectives. Defense counsel cross-examined Mr. Williams about the contours of his plea agreement, confirming that under his plea agreement he faced nine years of incarceration exposure, which was less than what he would have faced without the

26

plea agreement. Defense counsel also cross-examined Mr. Lucero about his plea agreement, pointing out that he originally had approximately 100 years of incarceration exposure on this case including mandatory enhancement based on his prior felony convictions, but ultimately ended up with six years of incarceration exposure under his plea agreement.

{43} Defendant cites only to *State v. Brown*, 1998-NMSC-037, ¶¶ 16, 24, 126 N.M. 338, 969 P.2d 313, in support of his argument that the accomplices' plea agreements alone made their testimony unreliable. *Brown*, however, did not consider the issue of accomplice testimony through the prism of evidence sufficiency; instead, it considered whether a defendant's due process rights were violated by an impermissibly coercive immunity agreement for a testifying accomplice. *Id.* ¶¶ 17-24. The *Brown* court ultimately concluded that the accomplice testimony was not inherently unreliable. *Id.* ¶ 24. *Brown* is, therefore, distinguishable from the instant case because it concerns use immunity, rather than whether a plea agreement renders accomplice testimony inherently unreliable such that it cannot constitute substantial evidence.

{44} Given that Mr. Williams and Mr. Lucero were extensively questioned by both parties during trial regarding their cooperation and plea agreements, the jury was free to weigh their credibility accordingly. *See State v. Candelaria*, 2019-NMSC-004, ¶ 45, 434 P.3d 297 ("The jury alone is the judge of the credibility of

27

the witnesses and determines the weight afforded to testimony.") (internal quotation marks and citation omitted). "[T]he testimony of a single witness is sufficient evidence for a conviction." *State v. Soliz*, 1969-NMCA-043, ¶ 8, 80 N.M. 297, 454 P.2d 779. We will not otherwise reweigh the evidence the jury received. *See Garcia*, 2016-NMSC-034, ¶ 15. We therefore affirm Defendant's convictions as supported by substantial evidence.

## VIII. The District Court Did Not Err in Denying Defendant's Request for a Mistrial Due to the State's Alleged Mischaracterization in Its Rebuttal Closing Argument

{45} Defendant asserts that the prosecutor's statement in its rebuttal closing argument that "the State ultimately, unbeknownst to [Mr. Lucero], dismissed [Ms. Lucero's] case for lack of evidence[,]" prejudiced him to the extent that reversal and a new trial are required because the statement "undermined one of [Mr. Lucero's] possible motives to plead guilty and testify against [Defendant]." The State responds that there was no misstatement or misrepresentation, but also that if there was, it was not prejudicial to Defendant. The State also argues that "[i]t is not at all clear that the prosecutor's comments" implied "that [Ms. Lucero's] charges were dismissed before [Mr.] Lucero pled," which the State concedes would have been improper. Additionally, the State asserts that the prosecutor's statement was supported by the evidence adduced at trial because the State dismissed Ms.

28

Lucero's case prior to trial and Mr. Lucero testified that he did not know about the disposition of those charges.

**A.      Standard of Review**

{46}      We review a motion for a mistrial for abuse of discretion. *State v. Smith*, 2016-NMSC-007, ¶ 69, 367 P.3d 420. "The power to declare a mistrial should be exercised with the greatest caution." *Id.* (alteration, internal quotation marks, and citation omitted). "An argument for mistrial must show that the error committed constituted legal error, and the error was so substantial as to require a new trial." *Id.* Additionally, "we afford trial judges broad discretion in managing closing argument because they are in the best position to assess the impact of any questionable comment." *State v. Sena*, 2018-NMCA-037, ¶ 13, 419 P.3d 1240, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36932, May 25, 2018) (internal quotation marks and citation omitted). "The prosecution has . . . wide latitude during closing arguments[,]" but "[a] prosecutor's remarks must . . . be based on the evidence or made in response to the defendant's arguments." *Id.*

**B.      Analysis**

{47}      During Defendant's closing argument, defense counsel stated, "It's funny because in [Mr. Lucero's plea agreement listing coconspirators], [Ms.] Lucero is left out. But here in [Mr. Williams's plea agreement], Ms. Lucero is in there. So everything is basically just manipulated for the State to get what it's trying to get,

29

which is a conviction on [Defendant]. They take Ms. Lucero out for Mr. Lucero and the admission of conspiracy." Defense counsel continued, "And I'm talking about [Ms.] Lucero, who is alleged to be part of this conspiracy, did not come in here and tell you that [Defendant] was the one involved in this conspiracy, who did this." The entirety of the prosecutor's statement in rebuttal closing that is now the subject of this appeal is the following: "But the defense did actually tell you that [Mr. Lucero] was lying and made a lot of the fact that [Ms. Lucero] wasn't brought here to testify, and there was no agreement for [Mr. Lucero] to testify against [Ms.] Lucero. Now, what you did hear was that the State ultimately, unbeknownst to Mr. Lucero, dismissed her case for lack of evidence."

{48} Defendant objected that Ms. Lucero's case was dismissed "after [Mr. Lucero] pled." The district court overruled the objection, but instructed the jury that what the attorneys say during closing arguments is "not evidence" and that they would "be the ultimate judge of the facts[,]" and if they remembered something differently than the attorneys, the jury should "go with [their] memories." After closing arguments when the jury was deliberating, Defendant moved for a mistrial, arguing that the State's statement "causes extreme prejudice to the defendant, because it undermines the credibility of our closing . . . [a]nd . . . gives the jury the impression that a key motivation for Mr. Lucero to lie was not present when he . . . entered into his plea agreement and made this admission

30

of conspiracy." The district court denied Defendant's motion for a mistrial, stating that "the jury was cautioned a number of times, that what [the] attorneys say is not evidence, [and] what they need to do is rely on their memories of the testimony[.]" The district court concluded that Defendant was not prejudiced to the extent Defendant argued.

**{49}**    It is not clear to us whether the prosecutor's statement during rebuttal closing argument implied that the State dismissed Ms. Lucero's case before Mr. Lucero entered into his plea agreement. Regardless, Defendant has not shown that he was prejudiced by the prosecutor's statement, much less that he was prejudiced so substantially that the district court abused its considerable discretion in denying Defendant's motion for a mistrial. Even if the jury believed that Ms. Lucero's case was dismissed before Mr. Lucero accepted his plea agreement, Mr. Lucero testified and the State reiterated that Mr. Lucero did not know what the ultimate disposition of Ms. Lucero's case was, much less that the State had dismissed her case shortly before trial. Because he did not know the status of Ms. Lucero's case, Mr. Lucero could not have been motivated to lie during his testimony in order to obtain favorable treatment of his wife's criminal case. The district court's instruction that the attorneys' argument was not evidence and that the jury should rely on their own memories of the evidence was therefore sufficient to cure any possible prejudice resulting from the prosecutor's statement, to the extent that any such

31

prejudice exists. *See State v. Storey*, 2018-NMCA-009, ¶ 60, 410 P.3d 256 ("The trial court is given, and must exercise, considerable discretion in evaluating the propriety of argument and in curing any alleged defects."), *cert. denied*, ___-NMCERT-___ (No. S-1-SC-36695, Oct. 31, 2017). We conclude that to the extent the prosecutor's statement was improper, Defendant was not prejudiced because of it, and therefore the district court did not abuse its discretion in denying Defendant's motion for a new trial.

**IX.  Cumulative Error**

**{50}**  Defendant argues that "the combined effect" of all of the district court's errors requires reversal. In the absence of any error, much less multiple errors, we disagree, and conclude that there was no cumulative error.

**CONCLUSION**

**{51}**  For the aforementioned reasons, we affirm Defendant's convictions for armed robbery, conspiracy to commit armed robbery, aggravated burglary, and conspiracy to commit aggravated burglary. We remand with instructions that the district court vacate one of Defendant's convictions for conspiracy and to resentence Defendant accordingly.

**{52}  IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

32

**WE CONCUR:**

_____

**KRISTINA BOGARDUS, Judge**

_____

**JACQUELINE R. MEDINA, Judge**